UNION PLANTERS NATIONAL BANK OF MEMPHIS, Plaintiff-Appellant,

v.

CBS, INC., Stax Records, Inc., Alvertis Isbell, a/k/a Al Bell, and James F. Stewart, Defendants-Appellees.

No. 76–1420.

United States Court of Appeals, Sixth Circuit.

Argued April 8, 1977.

Decided June 21, 1977.

Robert M. Johnson, Canada, Russell & Turner, Susan Callison, Memphis, Tenn., for plaintiff-appellant.

Newton P. Allen (CBS), Elmore Holmes III, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., Michael F. Pleasants (Stax et al), William F. Kirsch, Jr., Heiskell, Donelson, Adams, Williams & Kirsch, Memphis, Tenn., for defendants-appellees.

Before PHILLIPS, Chief Judge, and WEICK and ENGEL, Circuit Judges.

PHILLIPS, Chief Judge.

This is an interlocutory appeal under 28 U.S.C. § 1292(b), involving the removal of a state action to the United States District Court for the Western District of Tennessee under 28 U.S.C. § 1441(c). Diversity of citizenship exists between the plaintiff, Union Planters National Bank of Memphis, and only one of the defendants, Columbia Broadcasting System. All the defendants other than CBS are citizens of Tennessee.

Union Planters made loans of over $10 million to Stax Records and its affiliates. These loans were secured by the guaranties of Stax and two individuals, Bell and Stewart. Stax defaulted on its loans and Union Planters made a demand upon the guarantors. After default, Union Planters filed a complaint in the Chancery Court of Shelby County, Tennessee, against CBS, Stax, Bell and Stewart. The complaint sought recovery on the guaranties signed by Stax, Bell and Stewart. Alternately, it sought recovery from CBS. It alleged that CBS, in connection with a $6 million loan and related agreements between Stax and CBS, committed tortious acts which destroyed Stax's ability to pay its debts to Union Planters.

CBS filed for removal on the ground of diversity of citizenship between Union Planters and CBS, and the existence of a "separate and independent claim or cause of action" within the meaning of 28 U.S.C. § 1441(c). Thereafter, Union Planters moved to remand the action to the state court on the ground that there was no jurisdiction under § 1441(c). The district court concluded that the case was removable and refused to remand it. It also exercised its discretion to retain the entire suit, including those actions against the other defendants having no diversity of citizenship. Union Planters appeals. We reverse.

I.

Both Stax Records and CBS are recording companies. Stax, a Delaware Corporation with its principal offices in Tennessee, has focused on the "soul music" market. CBS, a larger and more diversified company incorporated in New York and having its principal offices there, is a full-line recording company.

Union Planters loaned Stax substantial amounts of money secured by the assets of Stax and guaranties of its principals, Bell and Stewart. On October 24, 1972, CBS and Stax entered into an agreement granting CBS exclusive distribution rights for Stax artists. At the same time, CBS loaned Stax $6 million secured by Stax assets, and Union Planters agreed to subordinate its security interest in Stax's assets in favor of CBS. However, Union Planters continued to make additional loans to Stax secured by Stax's financial assets, so that by November of 1974 Stax's total indebtedness to Union Planters amounted to the principal sum of $10,493,220.06 plus interest.

After Stax defaulted, Union Planters made an unsuccessful demand upon the guarantors. The complaint filed in the State court against Stax, Bell, Stewart and CBS sought the following relief:

■ That at the final hearing on this cause the Court enter an order declaring null and void the loan and security agreement [between CBS and Stax] . . . ., the distribution agreement [between CBS and Stax] . . . ., and the subordination agreement [between CBS and Union Planters] . . . .

■ That at the final hearing in this cause the Court enter a judgment in favor of Plaintiff against Defendants jointly and severally for the sum of Ten Million Four Hundred Ninety-Three Thousand Two Hundred Twenty and 06/100 Dollars ($10,493,220.06), together with interest and costs including their reasonable attorneys' fees.

Union Planters sought recovery against the resident defendants, Stax, Bell and Stewart, on the basis of their written instruments, including the loan guaranties. Recovery against CBS was sought on the basis of its alleged tortious conduct.

The complaint alleged that the six million dollar loan by CBS was made to "provide funds for Stax to redeem 50% of its then outstanding and issued capital stock" and that the redemption thereafter made with the CBS funds was "unlawful under Del. Corp. Law § 160 in that Stax had insufficient capital and earnings". It averred that "prior to entering into the [loan and distribution agreement] . . . with Stax, CBS misrepresented to Plaintiff that the funds which it intended to advance would be used by Stax for operational purposes only, and alternately knew that such misrepresentations were being made to Plaintiff and deliberately failed to disclose the truth" and that in reliance upon such misrepresentations Union Planters executed a subordination agreement in favor of CBS.

Union Planters averred that a primary purpose of CBS in its dealings in this case "was to gain control of a substantial portion of the 'soul' music market" and specifically "to gain control, dominion and beneficial ownership of Stax for said purpose to the detriment of Stax and its creditors." In furtherance of this goal Union Planters alleged that CBS performed the following acts:

(a) It followed a consistent practice of over-ordering records and other products which it did not reasonably expect to sell and then declared it surplus inventory and refused to pay Stax;

(b) It refused to negotiate a revised wholesale price in violation of the distribution agreement thereby forcing Stax to operate at a reduced profit margin or to sell below cost;

(c) After it gained control of the Stax distribution system, it wrongfully discriminated in the promotion and sale of products in a manner favoring promotion and sale of its own products at the expense of Stax products; and,

(d) It wrongfully reserved out of the proceeds of sales of records produced by Stax, large sums due to Stax for the purpose of limiting Stax's cash flow and rendering it unable to meet operating expenses and fixed obligations to creditors, particularly the plaintiff.

By virtue of this conduct, Union Planters avers, CBS has gained,

"control of Stax for its own exclusive benefit and to the detriment and damage of Stax's creditors and the Plaintiff in particular, in that it has wrongfully appropriated to its own use and purposes the assets of Stax and has destroyed the ability of Stax to remain in business in the soul music market and thereby destroyed Stax's ability to pay its obligations . . . .."

In denying the motion to remand the action to the State court, the district court ruled as follows:

A careful reading of the Complaint, however, indicates that the Bank has sued all defendants except CBS on the basis of debt (or guaranty of a loan), whereas it has sued CBS for deceit, misrepresentation and, in effect, fraudulent inducement of a subordination agreement.

Furthermore, the Bank complains that CBS pursued a wrongful course of action to gain control over Stax and its assets to the detriment of the Bank and other creditors. . . . [I]n effect, the Bank contests the validity of the subordination agreement and presents a controversy as to which creditor, the Bank or CBS, should have a priority status as to Stax and its Tennessee guarantors.

. . . . .

Within the meaning of *Climax Chemical Co. v. C. F. Braun Co.*, 370 F.2d 616, 619 (10th Cir. 1966), there is 'substantive separability' between the Bank's cause of action against Stax and its principals and that against CBS. There is more than one primary right asserted by U. P. Bank, and more than just one wrong is, in reality, asserted. The Bank has tried to combine two *separate* and *independent* (though indirectly related) causes of action.

The district court ruled that in the interest of a speedy resolution of all the controversies, it would retain the entire action under § 1441(c).

## II.

The sole issue on appeal is whether Union Planters' complaint stated a separate and independent claim or cause of action against CBS so as to be removable to the district court pursuant to § 1441(c).

■ Section 1441(c), enacted in 1948, provides:

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

The purpose behind enactment of the statute was twofold: first, Congress wished to clarify and simplify the old "separable controversy" standard [1] which had proved to be unsatisfactory; and second, it sought to limit the volume of litigation removed to federal court. *See* Reviser's Note, reprinted at 28 U.S.C. § 1441.

The leading case in this area and the key to interpreting § 1441(c) is *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). A Texas resident brought suit in a Texas court against two foreign insurance companies and a non-diverse insurance agent seeking damages for a fire loss. The three defendants were joined because of uncertainty as to who was liable. The plaintiff claimed that one of the insurance companies was alternately liable for the fire loss under a policy issued by each separately, or that the insurance agent was negligent in failing to insure the premises adequately. The diverse insurance companies removed the case to federal court, which rendered a verdict against one of them. The Supreme Court upheld an attack upon removal jurisdiction by the very defendant who had sought it in the district court.

The Court noted the restrictive intent of Congress with respect to removal from state court. It went on to say that Congress in adopting the new "separate and independent claim or cause of action" test for removability added the word "independent" to emphasize a Congressional intention to require, as a prerequisite to removal, more complete disassociation between federally cognizable claims and those cognizable only in state courts. The restrictive policy of Congress against removal, the Court said, also necessitated an interpretation of "cause of action" that would insure that the policy was carried out. The Court then quoted an earlier opinion:

1. The separable controversy test existed for nearly 100 years. Separable Controversy Act of July 27, 1866, 14 Stat. 306; Act of March 3, 1875, c. 137, 18 Stat. 470; Act of March 3, 1887, c. 373, 24 Stat. 552, corrected by the Act of Aug. 13, 1888, c. 866, 25 Stat. 433; Act of March 3, 1911, ch. 231, § 28, 36 Stat. 1094. See *Texas Employers Insurance Ass'n v. Felt*, 150 F.2d 227, 232–33 (5th Cir. 1945).

Upon principle, it is perfectly plain that the respondent suffered but one actionable wrong and was entitled to but one recovery, whether his injury was due to one or the other of several distinct acts of alleged negligence or to a combination of some or all of them. In either view, there would be but a single wrongful invasion of a single primary right of the plaintiff, namely, the right of bodily safety, whether the acts constituting such invasion were one or many, simple or complex.

A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. *Id.* at 13, 71 S.Ct. at 539 (quoting from *Baltimore S. S. Co. v. Phillips*, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069).

The Court concluded that:

[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c). *Id.* at 14, 71 S.Ct. at 540.

■ As a general rule, removability is determined by the pleadings filed by the plaintiff. *Id.* at 14, 71 S.Ct. 534; *Great Northern Railway v. Alexander*, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918); *Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61, 65 (10th Cir.), *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957). In the latter case the court said: "[A]ll doubts arising from defective, ambiguous and inartful pleadings should be resolved in favor of the retention of state court jurisdiction." 248 F.2d at 65.

■ CBS contends that the actionable wrongs against the Tennessee defendants are separate and distinct from the wrongs alleged against it. The wrong asserted against the Tennessee defendants, CBS says, is a failure to pay debts; while the wrong which Union Planters asserts against CBS is a series of tortious acts. The fact that Union Planters utilized separate counts to plead different legal theories, one sounding in contract and the other in tort, does not automatically make them separate and independent. The complaint will be considered as a whole and the issue of removal determined on that basis. Multiple theories of recovery do not necessarily mean multiple causes of action where there is but one wrong. *Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969); *Staples v. O'Day Corp.*, 224 F.Supp. 576 (D.N.H. 1963); *Guess v. Kellogg Switchboard & Supply Co.*, 143 F.Supp. 807 (D.Cal.1956). *See Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir. 1975).

■ The cause of action against it, CBS contends, not only differs in legal character from the action against the Tennessee defendants, but it is based upon different events and transactions. The claims against it, CBS says, are based upon misrepresentation and fraud in connection with the subordination agreements as well as interference with contract, while the claim against the Tennessee defendants relates to loan transactions. CBS asserts that because the claims are based upon different events, they are distinct claims. However, where a plaintiff seeks to recover for a single injury arising from a series of interrelated events, and whether he sues several defendants jointly, severally, jointly and severally, or alternately, he is not asserting separate and independent claims under 1441(c). *American Fire & Casualty Co. v. Finn, supra*, 341 U.S. at 14, 71 S.Ct. 534; *Gray v. New Mexico Military Institute*, 249 F.2d 28 (10th Cir. 1957); *Snow v. Powell*, 189 F.2d 172 (10th Cir. 1951). In *Finn*, plaintiff alleged alternate liability among the three defendants. The facts giving rise to the potential liability involved separate insurance policies from separate defendants, or the lack thereof. Nevertheless, since they arose from an interlocked series of transactions the Court held they were not separate and independent and the case was not removable. We conclude in the present case that the alleged transactions are sufficiently interlocked to come within

**90**

the *Finn* rationale and thus the case is not removable.[2]

■ CBS contends that the difference in the measure of damages sought by Union Planters against the two defendants indicates more than one legal wrong. The relief Union Planters seeks against the Tennessee defendants, CBS says, is recovery of liquidated debts, while any recovery against CBS would be limited to any actual loss proximately resulting from the tortious actions CBS is alleged to have committed. This argument distorts the realities of the situation. What Union Planters seeks in this action is recovery of the money owed to it. Under the proposed analysis of CBS, the legal theory of the action, which controls the measure of damages, would have significance in determining whether there was one or more causes of action. A different measure of damages is inherent in claims containing both contract and tort theories of recovery. As we indicated above however, a theory of recovery is not synonymous with a cause of action.

■ Finally, CBS argues that Union Planters asserts a "separate and independent" cause of action against it when as a part of its relief, it asks for a recission of the subordination agreement between CBS and Union Planters. We do not agree. This additional remedy is aimed at correcting the single wrong allegedly done to Union Planters—depriving it of the payments due on its loans. Should Union Planters obtain a judgment against Stax it still might be hampered in collecting it because of the superior rights of CBS as a creditor. By seeking recission of the subordination agreement, which Union Planters alleges in its complaint is inextricably tied to CBS' efforts to gain control of Stax to the detriment of Union Planters, Union Planters has not asserted an independent cause of action. The qualifying word "independent" in the statute must be given meaning.[3]

CBS, who sought to remove this action, has failed to meet its burden of showing that the federal court has jurisdiction. *P. P. Farmer's Elevator Co. v. Farmers Elevator Mutual Insurance Co.*, 395 F.2d 546 (7th Cir. 1968). The decision of the district court is reversed and the case is remanded to the district court with directions to remand the entire action to the State court.

No costs are taxed. All parties shall bear their own costs on this appeal.

2. The case of *Climax Chemical Co. v. C. F. Braun & Co.*, 370 F.2d 616 (10th Cir. 1966), *cert. denied*, 386 U.S. 981, 87 S.Ct. 1287, 18 L.Ed.2d 231 (1967), relied upon by the district court, is distinguishable. In *Climax* the plaintiff engaged a general contractor who in turn separately contracted with the other defendants to build various components of a new plant facility, which proved inoperable. Plaintiff brought suit for breach of contract and the case was removed to federal court. The Tenth Circuit by a divided 2–1 vote, upheld the removal, concluding that the liability of the defendant subcontractors was separate, distinct and unrelated. With the exception of the general contractor, the Court found that no defendant assumed responsibility for other than its own work, "or was liable in any way for the failure of the others." By contrast, the thrust of the complaint in the instant case is that CBS was liable for the failure of Stax and the others to fulfill their obligations.

3. There have been numerous attempts to define what Congress meant by separate and independent. *See e. g., Snow v. Powell, supra,* 189 F.2d at 174. ("The word 'separate' means distinct; apart from; not united or associated. The word 'independent' means not resting on something else for support; self-sustaining; not contingent or conditioned.")