875 F.2d 866
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Melvin J. MORRIS, et al., Plaintiffs-Appellants,
v.
Eric BOUCHER, et al., Defendants-Appellees.
 No. 88-1258.
 United States Court of Appeals, Sixth Circuit.
 May 23, 1989.
 
 Before BOYCE F. MARTIN and RYAN, Circuit Judges, and GEORGE C. SMITH, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiffs appeal the district court order denying their motion to remand this diversity false light/misappropriation action to state court and the district court's order granting summary judgment to defendant Newsweek. Because we conclude that plaintiffs' claim against Newsweek was not "separate and independent" from their claims against the other defendants, within the meaning of 28 U.S.C. Sec. 1441(c), we hold that the case was not removable to the federal court, and therefore the district court lacked jurisdiction to hear it. We are therefore obligated to reverse.
 
 I.
 
 2
 Plaintiffs, members of the Shriner fraternal organization, were photographed while participating in a bicentennial parade in 1976. The photograph subsequently appeared in Newsweek Magazine, published by defendant Newsweek, on July 4, 1976. In July 1985, defendant Newsweek received a letter from an entity called A.T. Graphics requesting permission to purchase the photograph. Upon payment of a $175 fee, defendant Newsweek granted a one-time right to reprint the photograph. It later appeared on a record album entitled "Frankenchrist" by the Dead Kennedys, a punk rock group. The album was apparently manufactured and distributed by Alternative Tentacles Records. The album also included a poster entitled "Penis Landscape," by a Swiss artist, which apparently portrays "penises, vaginas, and other unidentifiable human orifices."
 
 
 3
 Plaintiffs strenuously object to their association with the record album. They find the music, lyrics, the poster, and the words "Frankenchrist" and "Dead Kennedys" offensive and objectionable. They therefore filed a complaint in the Circuit Court for Wayne County, Michigan alleging causes of action for false light and misappropriation. Their complaint names as defendants four individuals alleged to be members of the Dead Kennedys, Newsweek, Sam's Jams Corporation, and Harmony House Records & Tapes, Inc. The latter two defendants, both Michigan corporations, are alleged to have engaged in the business of selling at retail records and albums, and in particular to "have advertised, distributed, circulated and sold at retail the album throughout the County of Wayne, and State of Michigan." Defendant Newsweek subsequently filed a petition to remove the action to the District Court for the Eastern District of Michigan on the basis of diversity of citizenship. Newsweek recognized that the existence of the two Michigan defendants precluded complete diversity of citizenship, but argued that the district court could still exercise jurisdiction because: (1) the Michigan defendants were purely "nominal parties against whom no reasonable basis exists for predicting that state law might impose liability," thereby supporting removal pursuant to 28 U.S.C.A. Sec. 1441(a) (1973); and (2) "plaintiffs have stated separate and independent claims or causes of action against Newsweek which would be removable under diversity jurisdiction if sued upon alone," thereby enabling the court to exercise jurisdiction pursuant to 28 U.S.C.A. Sec. 1441(c) (1973).
 
 
 4
 Plaintiffs subsequently filed a petition to remand the action back to Wayne County Circuit Court. The district court agreed with plaintiffs that the Michigan defendants were not "nominal" parties, and that diversity jurisdiction therefore did not exist under Sec. 1441(a). Newsweek does not dispute this conclusion on appeal. Nevertheless, the district court denied plaintiffs' motion to remand on the ground that plaintiffs' claim against Newsweek "would stand as a separate and independent claim" from the claims asserted against the other defendants. The court therefore concluded that diversity jurisdiction existed pursuant to Sec. 1441(c). Defendant Newsweek had previously filed a motion for summary judgment, and the district court entered an order granting that motion on February 16, 1988. This appeal followed.
 
 II.
 
 5
 At the outset, it should be observed that Newsweek, while not directly arguing the point, notes that plaintiffs "did not properly preserve [the jurisdictional 'separate and independent claim'] issue in either their Petition for Remand or their Claim of Appeal." While that is correct, this court is obligated, nevertheless, to address the question, which was briefed and argued to this court by the plaintiffs and Newsweek, "because the issue of subject matter jurisdiction is threshold to the court's authority to invoke its jurisdiction to proceed with an action. Subject matter jurisdiction may be contested at any and all stages of the proceedings, even after judgment and may be addressed by the court sua sponte." Stone v. William Beaumont Hospital, 782 F.2d 609, 613 n. 3 (6th Cir.1986). The jurisdiction question is therefore properly before the court.
 
 Section 1441(c) provides:
 
 6
 Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.
 
 
 7
 28 U.S.C.A. Sec. 1441(c) (1973).
 
 
 8
 The district court judge reasoned that the claim against Newsweek was "separate and independent" within the meaning of Sec. 1441(c) because
 
 
 9
 [t]he facts clearly show that Newsweek's only involvement in the present dispute occurred when it sold the reprint rights to the Shriners photograph. In no way did Newsweek conspire or join with the other defendants to cause this injury. Absent a concert of action, the claim being made against Newsweek stands isolated and distinct. (Citations omitted.)
 
 
 10
 We must disagree with the learned trial judge. The test for determining whether a claim or cause of action against one of multiple defendants is "separate and independent" is not whether the defendant in question acted conspiratorily, jointly, or in concert with others to injure the plaintiff. The leading case construing Sec. 1441(c) is American Fire & Casualty Co. v. Finn, 341 U.S. 6 (1951), in which the Supreme Court was at pains to emphasize that the proper focus for determining whether a claim or cause of action under Sec. 1441(c) is "separate and independent" is not whether the defendant in question committed the same wrongful act against the plaintiff as was committed by the co-defendants, but whether the plaintiff suffered a single wrong or injury to which all of the defendants contributed, albeit in different ways. The Court put it as follows:
 
 
 11
 [W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under Sec. 1441(c).
 
 
 12
 Id. at 14.
 
 
 13
 It is not a matter of whether the "controversy" between the plaintiff and a particular defendant is different than the controversies between plaintiff and other defendants.
 
 
 14
 A separable controversy is no longer an adequate ground for removal unless it also constitutes a separate and independent claim or cause of action.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 In a suit covering multiple parties or issues, there may be only one cause of action and yet be separable controversies.
 
 
 18
 Id. at 11-12.
 
 
 19
 This court applied the Supreme Court's Finn analysis in Union Planters National Bank of Memphis v. CBS, Inc, 557 F.2d 84, 89 (6th Cir.1977) (emphasis added), stating: "[W]here a plaintiff seeks to recover for a single injury arising from a series of interrelated events, and whether he sues several defendants jointly, severally, jointly and severally, or alternately, he is not asserting separate and independent claims under 1441(c)." This "single wrong" test for determining whether a separate and independent claim or cause of action exists under Sec. 1441(c) has been adopted by every circuit which has considered the question. ITT Industrial Credit Co. v. Durango Crushers, Inc., 832 F.2d 307, 308 (4th Cir.1987); Lewis v. Louisville & Nashville Railroad Co., 758 F.2d 219, 221 (7th Cir.1985); New England Concrete Pipe v. D-C Systems of New England, Inc., 658 F.2d 867, 872-74 (1st Cir.1981); Union Planters, 557 F.2d at 89.
 
 
 20
 Applying this test to the case at bar, it is apparent that plaintiffs suffered but one wrong: the publication of their photograph in conjunction with the other material included in the Frankenchrist record album. The actions attributed to Newsweek were part of an interlocked series of transactions which ultimately led to the alleged wrong. Newsweek sold the photograph to A.T. Graphics thereby enabling its publication as part of the Frankenchrist album. Questions of removability are governed by the plaintiffs' complaint. Union Planters, 557 F.2d at 89. As Newsweek itself has persuasively argued, "[t]he thrust of Plaintiffs' First Amended Complaint is their objection to The Dead Kennedys' music, lyrics, and to the poster accompanying the album." Because plaintiffs' complaint alleges a single wrong, the claim against Newsweek cannot be "separate and independent" within the meaning of Sec. 1441(c).
 
 
 21
 We hold that the district court lacked jurisdiction to entertain plaintiffs' suit against Newsweek. We recognize and regret the anomalous situation that results from our decision; a dispositive judgment in favor of the principal defendant is nullified and the litigation is reinstated in another jurisdiction, with all the attendant cost and inconvenience to the parties. We are powerless to avoid this result, however, since this federal court of limited jurisdiction was, from the beginning, without authority to entertain this case. It is unfortunate that the binding precedent declaring as much apparently was not brought to the district court's attention.
 
 
 22
 The judgment of the district court is therefore REVERSED and the case is REMANDED with instructions to the district court to remand it to the Wayne County Circuit Court.
 
 
 23
 GEORGE C. SMITH, District Judge, concurring.
 
 
 24
 I concur with the majority that (1) it is well established that subject matter jurisdiction may be raised at any stage in the proceeding, Capron v. Van Noorden, 2 Cranch 126, 127 (1804), American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17-18 (1951), Stone v. William Beaumont Hospital, 782 F.2d 609, 613 n. 3 (6th Cir.1986) and (2) Finn, as applied by this Court in Union Planters National Bank of Memphis v. CBS, Inc., 557 F.2d 84 (6th Cir.1977), requires the result reached here. Indeed, "[m]ost commentators agree that few, if any, diversity cases can be properly removed under Sec. 1441(c) in light of the construction placed on the statute by the Finn case." 14A C.Wright, A.Miller & E.Cooper, Federal Practice and Procedure: Jurisdiction 2d Sec. 3724, at 367 (1985). But, I write separately to observe that Finn [which apparently is the only Supreme Court case to interpret 28 U.S.C. Sec. 1441(c), 14A C.Wright, A.Miller & E.Cooper, supra, at 364] and its progeny may more narrowly construe 28 U.S.C. Sec. 1441(c) than is necessary or desirable.
 
 
 25
 On the face of the complaint, no facts and no tenable theory of recovery have been alleged that would sustain any cause of action against defendant Newsweek. In my view, when, on the face of a complaint, no colorable cause of action is alleged against a 'diverse' party, the complaint should be viewed as if no cause of action was "a separate and independent claim or cause of action" against that party and thus be removable under 28 U.S.C. Sec. 1441(c); this would secure defendant Newsweek from frivolous joinder and confer the protection of the federal courts that removal jurisdiction was designed to offer. However, in Finn the Supreme Court has interpreted the above-quoted statutory phrase, narrowing it to preclude removal when "there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions." Finn, 341 U.S. at 14. In the case at bar, there is a series of transactions; although no conspiracy, connivance, or collusion is asserted with regard to the transactions, they are at least sequential; and, they even may be "interlocked" in the broad sense that the Supreme Court has applied the term (in any case, the defendant has not articulated an effective distinction from Finn ). The transaction alleged to involve Newsweek does not set forth any tortious conduct by Newsweek against the plaintiffs. Still, under Finn, the single-wrong-from-interlocked-transactions standard precludes defendant Newsweek from obtaining the protection of the federal court because, as one commentary has noted, the plaintiffs have alleged a single wrong and "separate defenses will not make a case removable." 14A C.Wright, A.Miller, & E.Cooper, supra, at 362. Thus, the district court must be reversed.
 
 
 26
 While the constitutional interest of preserving diversity removal jurisdiction would be reconciled with the interests of judicial economy and sound judicial administration by affirmance of the district judge's disposition of the case, Finn requires a different result. Newsweek's remedy must now reside in the sound judgment of the Michigan court--or in the Supreme Court, should the defendant attempt to persuade the Justices to modify Finn.
 
 
 
 *
 The Honorable George C. Smith, United States District Judge for the Southern District of Ohio, sitting by designation