**Louise Robichaud SAMAROO, Plaintiff,**

v.

**Winston R. SAMAROO, Defendant.**

**AT & T MANAGEMENT PENSION PLAN, Plaintiff,**

v.

**Louise M. ROBICHAUD, Defendant.**

**Civ. Nos. 89–2215(GEB), 89–2216(GEB).**

United States District Court,
D. New Jersey.

July 17, 1990.

---

Christopher H. Mills, Collier, Jacob & Sweet, P.C., Somerset, N.J., for AT & T Management Pension Plan.

William A. Behan, McMoran & Palmieri, P.C., Lebanon, N.J., for Louise Robichaud.

AMENDED OPINION [1]

BROWN, District Judge.

This matter is before the Court on three motions: (1) Louise Robichaud's motion, as plaintiff, to remand Civil No. 89–2215 to state court; (2) Louise Robichaud's motion, as defendant, to dismiss Civil No. 89–2216; and (3) Plaintiff, AT & T Management Pension Plan's, motion to consolidate Civil No. 89–2215 and Civil No. 89–2216. In resolving these motions, the Court must consider, among other issues, the scope of removal jurisdiction over an action which implicates both state domestic relations law and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*

## I. BACKGROUND

The genesis of this dispute arose on October 25, 1984, when the New Jersey Superior Court, Chancery Division, entered a Final Judgment of Divorce dissolving the marriage of Louise Robichaud Samaroo (hereinafter Robichaud) to Winston Samaroo. That Final Judgment of Divorce incorporated a settlement agreement, the only relevant portion of which provided:

(d) Pensions, Profit Sharing and Bell System

Savings Plan—(1) Husband has a vested pension having a present value, if husband were to retire at this time, of $1,358.59 per month. *At the time of husband's retirement and receipt of his pension he agrees to pay to wife one half of said monthly amount.*

*See* Settlement Agreement, ¶ 3.2(d) (emphasis added).

At the time of the divorce, Winston Samaroo was employed by AT & T Technologies, and he enjoyed vested pension rights in the AT & T Management Pension Plan ("AT & T–MPP"). It was one-half of these rights which Winston Samaroo assigned to his former wife under the settlement agreement. Before reaching retirement, however, Winston Samaroo died on September ber 20, 1987. Robichaud submitted the settlement agreement to AT & T–MPP and requested payment of one-half her former husband's vested pension benefits.

In June 1988, AT & T–MPP denied Robichaud's claim for benefits, concluding that the settlement agreement did not create any right in Robichaud to survivor's benefits, but merely gave her a right to receive benefits upon Winston Samaroo's retirement. AT & T–MPP further determined that, because ERISA permits the creation of a survivor's benefit only in favor of an existing "participant" in the pension plan, and because Winston Samaroo's status as a "participant" ended at his death, any attempt by Robichaud to amend the Final Judgment of Divorce and specify an entitlement to survivor's benefits would be unenforceable under ERISA.

Undaunted by AT & T–MPP's position, Robichaud filed a motion in the New Jersey Superior Court, Chancery Division, to amend the Final Judgment of Divorce and join AT & T–MPP as a defendant.[2] AT & T–MPP timely filed a Petition for Removal with this Court pursuant to 28 U.S.C. § 1441. The Petition for Removal, Civil No. 89–2215(GEB), alleged federal jurisdiction under ERISA on the ground that the motion by Robichaud to amend the Final Judgment of Divorce "is an action by an alleged beneficiary of an ERISA-qualified pension benefit plan to secure benefits from that plan." AT & T–MPP simultaneously filed a complaint in this Court for declaratory relief. That complaint, Civil No. 89–2216(GEB), seeks an order:

(1) declaring that Winston Samaroo's rights under the pension plan were finally determined on the date of his death and cannot now be retroactively changed;

(2) declaring that Robichaud is not entitled to any survivor's benefits under the pension plan;

---

1. The original Memorandum and Order resolving these motions was signed on March 27, 1990. The Court has amended the Memorandum and Order solely for the purpose of publication.

2. Robichaud's motion was not a new civil action; it was a motion directed at the original divorce action, which was captioned *Samaroo v. Samaroo*, Docket No. FM–07705–85.

(3) declaring that any order issued by the Superior Court of New Jersey, Chancery Division, amending the settlement agreement would be inconsistent with ERISA; and

(4) declaring that the Final Judgment of Divorce, which incorporated the settlement agreement, cannot be modified *nunc pro tunc* following the death of Winston Samaroo.

Robichaud has now filed a motion to remand the removed state action, Civil No. 89–2215(GEB), contending that this action does not arise under ERISA, and that no other basis of federal jurisdiction exists to support removal. Robichaud has also filed a motion to dismiss the declaratory judgment action, Civil No. 89–2216(GEB), on jurisdictional grounds as well. AT & T–MPP has moved to consolidate both actions, and opposes Robichaud's motions on the argument that the broad scope of ERISA confers jurisdiction on this Court.

## II. DISCUSSION

### A. *The Statutory Framework*

A brief review of the federal statutory framework is necessary to a full understanding of the jurisdictional issues before the Court. Prior to 1984, ERISA prohibited the alienation or assignment of pension plan benefits. *See* 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."). On August 23, 1984, Congress amended ERISA by passing the Retirement Equity Act (REA), the provisions of which became effective January 1, 1985. REA permits a pension plan participant to alienate or assign benefits under a domestic relations order,[3] but only if the order is "determined to be a qualified domestic relations order." *See* 29 U.S.C. § 1056(d)(3)(A). A domestic relations order must satisfy the requirements of § 1056(d)(3)(C) and (D) before it can be a

"qualified domestic relations order." The first of these two subsections outlines the information which a domestic relations order must contain:

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C). The second subsection limits the ability of a participant to assign or alienate benefits:

(D) A domestic relations order meets the requirements of this subparagraph only if such order—

(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

29 U.S.C. § 1056(d)(3)(D).

█ One other aspect of the statutory framework is of particular relevance here. Congress was concerned that the combination of ERISA's sweeping preemption of state law, 29 U.S.C. § 1144(a), and the pro-

---

**3.** REA defines a domestic relations order as "any judgment, decree, or order (including approval of a property settlement agreement) which—

(I) relates to the provision of child support, alimony payments, or marital property rights

to a spouse, former spouse, child, or other dependent of a participant, and

(II) is made pursuant to a State domestic relations law (including a community property law).

*See* 29 U.S.C. § 1056(d)(3)(B)(ii).

visions of REA would result in needless federal interference with state domestic relations laws. Congress avoided this potential comity problem by exempting qualified domestic relations orders from ERISA preemption. *See* 29 U.S.C. § 1144(b)(7). In other words, to the extent REA is silent concerning qualified domestic relations orders, state courts will issue them in accordance with state law.

Having summarized the pertinent provisions of ERISA and REA, the Court turns to the jurisdictional contentions of the parties. Because jurisdiction over AT & T–MPP's declaratory judgment action may depend on the propriety of removal of Robichaud's original action in state court, the Court first addresses Robichaud's motion to remand Civil No. 89–2215(GEB).

### B. *Motion to Remand*

■ Removal jurisdiction is defined by 28 U.S.C. § 1441, and it is essentially coextensive with the original jurisdiction of the federal district courts, *see* 28 U.S.C. § 1441(a).[4] As such, a case is removable from state court if it is "founded on a claim or right arising under the Constitution, treaties or laws of the United States...." 28 U.S.C. § 1441(b). AT & T–MPP has sought removal on the ground that Robichaud's action in state court arises under federal law, in that it is an action "by an alleged beneficiary of an ERISA-qualified pension benefit plan to secure benefits from that plan." *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought by a ... beneficiary ... to recover benefits due to him under the terms of his plan....").

Under the "well-pleaded complaint" rule, whether a case arises under federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration,

unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914), *quoted in Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983). The statement of Robichaud's claim in *Samaroo v. Samaroo* is contained, not in the usual form of a complaint, but in a certification. Robichaud stated in her certification that, although the terms of the divorce did not explicitly give her survivor benefits[5], it "was never contemplated or intended that I would receive zero [benefits] in the event of my former husband's death prior to his retirement." *See* Robichaud Certification, ¶ 9. Robichaud accordingly requested that the state court amend the divorce judgment *nunc pro tunc* October 25, 1984, to reflect her survivorship rights and to comply with the requirements of REA for qualified domestic relations orders.

Were this the only relief Robichaud sought, the Court would have little trouble concluding that the state action did not "arise under" federal law. Amendment of the Final Judgment of Divorce to reflect Robichaud's right to survivor's benefits is not a remedy expressly granted by federal law, nor would it require the interpretation of a federal statute or application of a distinctive federal policy. *See, e.g., Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir.1974) ("An action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition."). *See also Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S.

---

**4.** Only one statutory distinction is made between original jurisdiction and removal jurisdiction: whereas original jurisdiction extends to a suit between diverse parties, 28 U.S.C. § 1332, the removal statute requires not only diversity, but also that all of the removing defendants be nonresidents. *See* 28 U.S.C. § 1441(b). This distinction is not important here, because the

only proffered basis of jurisdiction is federal question jurisdiction, *see* 28 U.S.C. § 1331.

**5.** The settlement agreement, incorporated in the Final Judgment of Divorce, merely provided that at "the time of husband's retirement and receipt of his pension he agrees to pay to wife one half of said monthly amount."

804, 808–09, 106 S.Ct. 3229, 3232–33, 92 L.Ed.2d 650 (1986). But this was not the only remedy Robichaud sought in state court, because she also joined AT & T–MPP as a defendant. She sets forth the reasons for this joinder in paragraph 13 of her certification:

> Attached is a copy of a recent [New Jersey Superior Court,] Appellate Division decision, *Cleveland vs. Board of Trustees, Police and Firemen's Retirement System,* which indicates at P. 9 that the Plan Administrator of AT & T should be joined in this action *in order to be directed to pay over to me my 50 percent interest.* Because of this recent decision, I have joined the Plan Administrator of AT & T as a fiduciary and as an indispensable party under [N.J.Ct.] Rules 4:28–1 and 4:28–2.

(emphasis added).

The case to which Robichaud refers, *Cleveland v. Board of Trustees, Police and Firemen's Retirement System,* 229 N.J.Super. 156, 550 A.2d 1287 (App.Div. 1988), was a suit by a divorcee against a state pension fund to enforce a divorce judgment which provided that the pension fund would pay directly to the divorcee her share of her former husband's benefits. The divorcee sought to hold the pension fund in contempt for failing to comply with that judgment. The Appellate Division held otherwise, relying on the divorcee's failure to join the pension fund as a party to the original divorce proceeding:

> Finally, Mrs. Cleveland asserts on appeal that the Board of Trustees should be held in contempt for failing to comply with the provision of the divorce judgment which purported to order the administrator of the New Jersey Police and Firemen's Retirement System to make payments directly to her. We reject that assertion. *She could have joined the Trustees of the Fund as a party to the divorce proceeding, but she failed to do*

> *so. The judgment was therefore not binding upon the Fund.*

*Id.* at 162–63, 550 A.2d 1287 (emphasis added).

This passage from *Cleveland,* coupled with the statement in paragraph 13 of her certification, makes it abundantly clear that Robichaud's ultimate goal in joining AT & T–MPP was an order from the state court directing AT & T–MPP to pay her half of her former husband's retirement benefit.[6] Robichaud takes the contrary position on this motion to remand, arguing that her only intention is to secure a qualified domestic relations order for eventual presentment to AT & T–MPP. The statement in her certification, however, belies that argument, and it is this statement which controls the jurisdictional inquiry under the "well-pleaded complaint" rule. The Court therefore concludes that Robichaud's joinder of AT & T–MPP transforms the state action, at least in part, into an action by an alleged beneficiary "to recover benefits due ... under the terms of [a] plan," 29 U.S.C. § 1132(a)(1)(B), and as such is an action over which this Court has original jurisdiction.

That this Court has original jurisdiction over at least part of the case creates more jurisdictional problems than it solves. Now the Court must determine whether the whole of *Samaroo v. Samaroo,* or only the federal claim against AT & T–MPP, is properly removable under 28 U.S.C. § 1441. If removal of the whole case is proper, it must be so under either § 1441(b) or (c):

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties....
>
> (c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined

---

**6.** Further support for this conclusion can be found in the certification of Joel Spivak, Esq., who represented Winston Samaroo throughout the divorce proceedings. In addition to stating his belief that his deceased client intended to give Robichaud a right to survivor's benefits,

Spivak urged the state court to amend the Final Judgment of Divorce "to require AT & T's Plan Administrator to pay to Ms. Robichaud her 50 percent interest in all pension benefits that were acquired during the marriage." *See* Spivak Certification, ¶ 5.

with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

Section 1441(b) has been universally interpreted to permit removal of non-federal claims only if they are within the pendent jurisdiction of the Court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). In the archetypal case, where a plaintiff asserts state and federal claims against the same defendant, federal judicial power to hear both would hinge on whether the claims "derive from a common nucleus of operative fact" such that "the entire action before the Court comprises but one constitutional 'case'." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. A common example is where an inmate sues a state-employed physician and joins a state claim for medical malpractice with a federal claim under the Eighth Amendment. These claims are so closely related that the inmate would "ordinarily be expected to try them [both] in one judicial proceeding...." *Id.*

Persuasive reasons exist why this Court should decline the exercise of pendent jurisdiction over Robichaud's motion to amend the Final Judgment of Divorce. Prominent among them is the fact that here, unlike the example given above and unlike *Gibbs*, the non-federal claim is asserted against a different party than is the federal claim. The non-federal claim is purely a dispute between Robichaud and the estate of her former husband over the terms of their divorce. Extending federal jurisdiction to this dispute therefore involves a somewhat different inquiry than that undertaken in *Gibbs*. That inquiry was outlined in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), where the Supreme Court acknowledged that "there is a more serious obstacle to the exercise of pendent jurisdiction [over additional parties] than if parties already before the court are required to litigate a state-law claim." *Id.* at 18, 96 S.Ct. at 2422.

Though reluctant to establish an all-encompassing rule for "pendent party" jurisdiction, the Court in *Aldinger* held that to assert such jurisdiction, "a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." *Id.*

The scope of Article III of the Constitution need not be considered here, for the Court is persuaded that Congress has displayed a clear resolve not to extend federal jurisdiction to this domestic relations dispute. To begin with, it has long been settled doctrine that the "whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890). *See also Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1859). As the Second Circuit reflected in a more recent case:

> More than a century has elapsed since the *Barber* dictum without any intimation of Congressional dissatisfaction. It is beyond the realm of reasonable belief that, in these days of congested dockets, Congress would wish the federal courts to seek to regain territory....

*Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 514 (2d Cir.1973), *quoted in Solomon v. Solomon*, 516 F.2d 1018, 1025 (3d Cir.1975).

The apparent hesitance of Congress to encroach upon an area historically reserved to the states is not, however, the only evidence of congressional intent. For there is evidence in ERISA itself that Congress intended to negate the same type of assumption of jurisdiction which AT & T–MPP now urges upon the Court. As the Court explained above, Congress' concern that the combination of ERISA preemption and the provisions of REA would lead to unnecessary federal involvement in state domestic relations laws prompted the statutory exemption of qualified domestic relations orders from ERISA preemption. *See* 29 U.S.C. § 1144(b)(7). The Court finds this to

be convincing evidence that the dispute in this case over Robichaud's right to survivor's benefits is not one which Congress wanted this Court to hear. Accordingly, the Court holds that the exercise of "pendent party" jurisdiction, assuming removal under § 1441(b), would be inconsistent with the intent of Congress.

■ The remaining question is whether removal of the dispute between Robichaud and her deceased ex-husband over the terms of the divorce is otherwise allowable under § 1441(c). The Supreme Court has only once considered the parameters of § 1441(c). *American Fire and Cas. Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). In *Finn,* the Court found that Congress, in enacting § 1441(c), intended to make removal more difficult than it had been under 28 U.S.C. § 71, the former removal statute. Where the former statute permitted the removal of a separable "controversy," [7] § 1441(c) now requires a "separate and independent claim or cause of action." As the Court in *Finn* explained it,

> 'separate cause of action' restricts removal more than 'separable controversy.' In a suit covering multiple parties or issues based on a single claim, there may be only one cause of action and yet be separable controversies. The addition of the word 'independent' [in § 1441(c)] gives emphasis to congressional intention to require more complete disassociation between the federally cognizable proceedings and those cognizable only in state courts before allowing removal.

*Id.* at 12, 71 S.Ct. at 539 (footnote omitted).

In *Finn,* a Texas resident sued two nonresident insurance companies and their resident agent in a Texas state court. The plaintiff claimed that the companies and their agent were jointly and severally liable for a property loss suffered by the plaintiff. The companies removed the claims against them under § 1441(c), but the Supreme Court held that removal was improper under the statute. In so holding, the Court stated that "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *Id.* at 14, 71 S.Ct. at 540.

At first glance, § 1441(c) might appear to permit removal of this domestic relations dispute where § 1441(b) does not. As the courts and commentators have recognized, the current structure of the removal statute seems to "suggest that when a defendant removes an 'arising under' case, any state claims involved are either sufficiently closely related to the federal claims to be considered 'pendent' (and thus removable under § 1441(b)), or they are sufficiently unrelated to be considered 'separate and independent' (and thus removable under § 1441(c))." *Charles D. Bonanno Linen Service, Inc. v. McCarthy,* 708 F.2d 1, 9 (1st Cir.1983) (citing Wright, Miller & Cooper, Federal Practice and Procedure, § 3724, at 649 (1976)). This statutory anomaly apparently exists because Congress had only diversity cases in mind when it enacted § 1441(c). The former statute, 28 U.S.C. § 71, was specifically limited to suits in diversity, *see supra* note 6, and it was the ease with which removal could be accomplished under that statute that Congress intended to change by the passage of § 1441(c). *See Finn, supra.* Although Congress deleted the specific reference to diversity in the new statute, there is no indication that it foresaw its application to federal question cases. *See Charles D. Bonanno,* 708 F.2d at 10 (citing Cohen, *Problems in the Removal of a "Separate and Independent Claim or Cause of Action,"* 46 Minn.L.Rev. 1 (1961)).

In view of the expressed design of Congress to restrict the removability of diversity cases, it would be unwarranted to assume that Congress also meant to expand the removability of federal question cases to encompass wholly unrelated state claims

---

7. The former statute provided in full:
And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district.

that are not within the original or even pendent jurisdiction of the district courts. Indeed, several courts and commentators have questioned the constitutionality of this result. *See, e.g., Thomas v. Shelton,* 740 F.2d 478, 483 (7th Cir.1984) ("For a combination of two claims one of which is completely unrelated to any claim within the federal district courts' original jurisdiction may not be one case within the meaning of Article III of the Constitution, in which event the unrelated claim would be outside that jurisdiction."); *see also* Lewin, *The Federal Courts' Hospitable Back Door—Removal of "Separate and Independent" Non–Federal Causes of Action,* 66 Harv.L.Rev. 423, 431–42 (1953).

This Court is convinced that the dispute between Robichaud and her deceased ex-husband is not removable under § 1441(c), but it is unnecessary for the Court to rest exclusively on evidence of congressional intent, or on a finding that § 1441(c) cannot be constitutionally applied in this instance. For even if it is removable under § 1441(c) as a "separate and independent" claim, the statute explicitly gives this Court discretion to "remand all matters not otherwise within its original jurisdiction", and this Court would choose to exercise that discretion to remand this domestic relations dispute. In sum, to the extent AT & T–MPP has removed that portion of *Samaroo v. Samaroo* involving the terms of the Final Judgment of Divorce, the Court will grant Robichaud's motion to remand. To the extent, however, that AT & T–MPP has removed Robichaud's claim against it for payment of her former husband's retirement benefits, the motion to remand will be denied.

### C. *Motion to Dismiss*

Robichaud has also moved to dismiss AT & T–MPP's declaratory judgment action, Civil No. 89–2216. Her only argument is that the action is merely an offensive assertion of a preemption defense, and that federal jurisdiction is therefore lacking. This argument, however, is necessarily foreclosed by the Court's determination that Robichaud's claim against AT & T–MPP arises under federal law.

AT & T–MPP brought Civil No. 89–2216 under the Declaratory Judgment Act, 28 U.S.C. § 2201. Though the Act expands the remedies available in federal court, it does not provide an independent basis of jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). The existence of jurisdiction will thus depend on "whether the defendant against whom declaratory judgment is sought could have asserted his rights in a federal court." *Transamerica Occidental Life Ins. Co. v. Digregorio,* 811 F.2d 1249, 1253 (9th Cir.1987) (citing *Skelly Oil*). The answer to this question is now simple. Because Robichaud, the "declaratory judgment defendant", could have sued AT & T–MPP directly in this Court under 29 U.S.C. § 1132(a)(1)(B), this Court has jurisdiction over AT & T–MPP's declaratory judgment complaint. Robichaud's motion to dismiss Civil No. 89–2216 will therefore be denied.

### D. *Motion to Consolidate*

AT & T–MPP seeks consolidation of Civil No. 89–2215 and Civil No. 89–2216 under Fed.R.Civ.P. 42(a). Robichaud has not contended that consolidation would be inappropriate, and this Court knows of no reason why these actions should proceed separately. AT & T–MPP's motion will accordingly be granted.

### E. *Stay of Proceedings*

Because part of this case must proceed in state court, the Court must finally consider whether the proceedings here should be stayed pending the state court's determination of Robichaud's motion to amend the Final Judgment of Divorce. The decision to decline or defer the exercise of federal jurisdiction in favor of parallel state litigation is governed by the principles laid down in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In those cases, the Supreme Court declared that fed-

**318**

eral courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," but that in "exceptional circumstances" abstention or a stay may be appropriate. *Colorado River*, 424 U.S. at 811, 96 S.Ct. at 1243.

The Supreme Court outlined four factors which must be considered before a court decides to stay proceedings. Those factors are: (1) whether the state court has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which jurisdiction was obtained by the state and federal courts. *Id.* at 818, 96 S.Ct. at 1246–47. The first factor has no application here, and the second militates against a stay, because this Court is just as convenient a forum as the state court. The other factors, however, weigh heavily in favor of a stay. Not only was the state court the first to assume jurisdiction, but more importantly, the proceedings there may well obviate the need to address any of the issues properly removed to this Court. As Ms. Robichaud concedes, if the state court refuses to amend the Final Judgment of Divorce, she has no viable claim for benefits against AT & T–MPP. Permitting the action here to proceed at this time is, therefore, inefficient, and possibly unnecessary. This case is similar to *Lumen Construction, Inc. v. Brant Construction Company*, 780 F.2d 691 (7th Cir.1985), where the Seventh Circuit held that a stay was proper because the civil rights claims in federal court could not be adjudicated until the state court had resolved certain state contract claims which had been brought solely in state court. *Id.* at 696. This Court concludes that a stay is appropriate here to allow the New Jersey Superior Court an opportunity to resolve Robichaud's motion to amend the Final Judgment of Divorce. An order to this effect will be entered, and the Court will, of course, retain jurisdiction.

### III. CONCLUSION

To summarize, *Samaroo v. Samaroo* is really two cases masquerading as one. The first case is a dispute between Robi-

chaud and the estate of her former husband over the terms of their divorce. As the Court has outlined above, no basis under § 1441 exists to support removal of this dispute, and it therefore must be remanded to state court. The second case, however, is a claim by Robichaud against AT & T–MPP for payment of her former husband's retirement benefit. Because that claim arises under ERISA, it was properly removed to this Court. Moreover, this Court also has jurisdiction over AT & T–MPP's declaratory judgment action, since Robichaud could have sued AT & T–MPP directly in this Court for benefits under 29 U.S.C. § 1132(a)(1)(B). The Court will consolidate the properly removed claim with the declaratory judgment action, but will stay the consolidated case until all state proceedings in *Samaroo v. Samaroo* are resolved.

A Memorandum and Order consistent with this decision already has been entered.