**FIDELITY FEDERAL BANK**

v.

**LARKEN MOTEL COMPANY, Kenneth S. Stein, and Larry Coleman.**

No. 91–0682.

United States District Court, E.D. Pennsylvania.

May 23, 1991.

---

Wayne A. Schaible, Brian A. Wall, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

William E. Benner, Edward M. Wild, Power, Bowen & Valimont, Doylestown, Pa., for defendants.

## MEMORANDUM AND ORDER

DuBOIS, District Judge.

The plaintiff, Fidelity Federal Bank ("the Bank"), a California citizen, brought this action against defendants, Larken Motel Company ("Larken"), a Pennsylvania limited partnership, Kenneth S. Stein ("Stein"), a resident of Pennsylvania, and Larry Coleman ("Coleman"), a New Jersey resident, seeking payment on a promissory note and related documents. The asserted basis of jurisdiction is diversity of citizenship pursuant to 28 U.S.C. § 1332.

1. The Agreement of Sale (dated February 20, 1990), an Amended Agreement of Sale (dated March 8, 1990) and the Pledge Agreement (dated April 30, 1990) were executed by the Bank and Stein. The Amended Agreement of Sale altered specific terms of the first Agreement, primarily related to price, but did not supersede

Defendants, prior to the commencement of this federal case, filed a Complaint in the Court of Common Pleas of Bucks County, Pennsylvania on a cause of action which is closely related to, and potentially determinative of, the federal case. The defendants now move this Court to dismiss or stay the federal action until the state case is resolved. For the reasons stated below, the Motion will be granted, and the case will be dismissed without prejudice.

### I. Background

The parties agree on the essential facts of the sale itself, while the nature of the federal and state lawsuits may be ascertained from the pleadings and other submissions.

#### A. The Sale

The Bank owned a Holiday Inn Motel in Bristol Township, Pennsylvania, as a result of the foreclosure on a mortgage given by the Bank to a previous owner. On February 20, 1990, the Bank and Stein executed an Agreement of Sale for the motel which included guest rooms, a restaurant, cocktail lounge, banquet facilities, fixtures, and a liquor license. Subsequently, the parties executed a Promissory Note, a Mortgage and Security Agreement, a Personal Guaranty, and a Pledge Agreement which secured the financing for the transaction, with the Bank serving in the role of both seller and lender.[1] Settlement on the transaction took place on April 30, 1990.

The Agreement of Sale, in Section 8.01(d), provides that "Seller has no knowledge of any Liquor License violation and believes that the Liquor License is in good standing and knows of no reason why the Liquor License could not be transferred." To accomplish the transfer of the liquor license, the Bank established a separate entity, Citadel Hospitality of Pennsylvania ("Citadel"), a Pennsylvania corporation,

the first Agreement as a whole. The Promissory Note and Mortgage and Security Agreement were executed by the Bank and Larken on April 30, 1990; and the Guaranty (signed April 30, 1990) was executed by Stein in favor of the Bank to secure obligations of Larken. Stein and Coleman are general partners of Larken.

which applied for a new liquor license. Notwithstanding Section 8.01(d), transfer of the liquor license was delayed, and the new owners of the Motel were unable to sell alcoholic beverages for several months.[2] It was a new license, obtained by Citadel, that was eventually transferred to Larken by Citadel.[3]

The Promissory Note executed by Larken required monthly payments. According to the Bank, no payments have been made by Larken or any other defendants since December 1, 1990.

### B. The Lawsuits

On December 14, 1990, Larken, Stein and Coleman filed a lawsuit in the Court of Common Pleas of Bucks County in which both the Bank and Citadel were named as defendants. The core issue in the state case is the allegation of Larken, Stein, and Coleman that the Bank made a material misrepresentation as to the transferability of the liquor license in Section 8.01(d) of the Agreement of Sale. The state-court Complaint sought recision of the Sales Agreement, cancellation of the Promissory Note, Mortgage and other instruments of indebtedness, return of title to the premises and other property to the Bank and Citadel, and reimbursement for Larken's expenses related to the transaction.

On January 30, 1991, the Bank filed the instant action, seeking payment of the entire unpaid principal balance, interest, and late charges, totalling $2,138,762.49, plus interest (accruing at the rate of $875 per day from January 24, 1991) and attorney's fees.

---

**2.** Section 5.03 of the Agreement provides that "Seller represents that all outstanding 'due bills' for expenses incurred in the operation of the Inn shall be paid at or prior to Closing or Seller shall make satisfactory provision to assure Buyer of the payment of same." The transfer of the liquor license was delayed because of debts owed the state by the previous owner of the motel.

**3.** Citadel signed the Agreement of Sale as to § 801 only.

## II. *Discussion*

The federal action seeks enforcement of financial agreements which are subject to cancellation in the state court action. The most efficient way to address such concerns is to require the Bank, plaintiff in the federal action, to assert its claims as counterclaims in the state court. Although judicial efficiency is of paramount concern to this Court, other factors must be considered in addressing the issues presented.

The defendants seek to have this Court stay or dismiss the federal case by the Bank, under the doctrine set out by the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and refined in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).[4] In *Colorado River*, the Court noted that generally "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court," but went on to establish that in certain "exceptional circumstances" a stay or dismissal by the federal court in the face of a concurrent and related state case is permitted on the grounds of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.

The plaintiffs contend that the *Colorado River* doctrine should not apply to the two pending lawsuits involved in this dispute because they raise "similar, but different, issues." *See* Plaintiff's Memorandum of Law, at 4.[5] However, it is incorrect to

---

**4.** The Supreme Court did not use the word "abstention" to describe the action it allowed in *Colorado River*, though it has become common practice among lower courts and commentators to do so. The Third Circuit, however, has determined that a stay or dismissal under *Colorado River* is not properly described as an abstention. *Ingersoll–Rand Financial Corp. v. Callison*, 844 F.2d 133, 136 n. 3 (3d Cir.1988).

**5.** Plaintiff makes much of the fact that the state court action seeks the cancellation, not the recision, of the financial agreements. This Court does not see the relevance of this distinction.

assume that *Colorado River* only applies where the state and federal actions are identical in every way.[6] Determinative of this question is *Ingersoll–Rand Financial Corp. v. Callison,* 844 F.2d 133 (3d Cir. 1988), in which the Circuit Court ordered a stay under *Colorado River* where a debtor had filed a state suit to cancel a note, and the lender had filed a federal action to collect on the note. This, of course, is parallel to the fact situation in the case at bar.

## A. The Colorado River Factors

■ The *Colorado River* and *Moses H. Cone* cases set out six factors for consideration when a defendant moves for dismissal or a stay due to a pending state case. As described in *Ingersoll–Rand,* 844 F.2d at 136, these six factors are (1) whether either court has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the avoidance of piecemeal litigation, (4) the order in which the courts obtained jurisdiction, (5) which forum's substantive law governs the merits of the litigation, and (6) the adequacy of the state forum to protect the parties' rights. Each will be addressed in turn.

### 1–2) *Jurisdiction over property and inconvenience of the federal forum*

Given the heavy weight in favor of asserting federal jurisdiction, *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937, the first two factors weigh against a stay or dismissal. Neither court has assumed jurisdiction over property, and the United States Courthouse in Philadelphia is as convenient to the parties as the Bucks County Courthouse in Doylestown. However, each of the remaining four factors weigh in favor of a stay or dismissal.

Should the state court choose either to rescind or cancel the financial agreements as wrongfully or fraudulently induced, they will be invalid as a basis of subsequent legal action.

**6.** The Third Circuit has held that for *Colorado River* to apply, the state and federal actions must seek jurisdiction over the same *res,* and the state court must be able to address all claims. *University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265, 276 & n. 16 (3d

### 3) *The avoidance of piecemeal litigation*

In *Colorado River,* the decision to consider the avoidance of piecemeal litigation as a factor was predicated on a federal water rights policy, expressed in a statute, against removal of such cases to federal court. Since that holding, however, the avoidance of piecemeal litigation has been generalized to become an accepted *Colorado River* factor in other types of cases in this Circuit. *See Ingersoll–Rand,* 844 F.2d at 136, *Samaroo v. Samaroo,* 743 F.Supp. 309, 318 (D.N.J.1990); *Aetna Casualty & Surety v. Sterner,* 700 F.Supp. 252, 256 (E.D.Pa.1988).

The plaintiff here argues against the generalized reading of *Colorado River* found in *Samaroo* and *Aetna,* and asserts that for a court to decline jurisdiction under *Colorado River,* the declination must not only avoid piecemeal litigation, but must do so in response to a specific federal policy. The Court finds in this case that declination of jurisdiction both serves the purpose of avoiding piecemeal litigation and does so in response to federal policy.

### a. The effects of declining jurisdiction

In the case at bar, a dismissal or stay pending the outcome of the state case would serve the generalized goal of avoiding piecemeal litigation. A counterclaim by the Bank in state court would result in resolution of all of the disputes at issue in both current cases, disposing of the matter entirely. That result could not be achieved in the case at bar because Citadel,[7] the entity to which defendants seek to return the liquor license, is not a party. Further, Citadel could not be joined as a party under Federal Rules of Civil Procedure 13(h) or 14(a). Larken cannot counterclaim against

Cir.1991). Here, the two cases (once defenses and counterclaims are lodged) will concern the same body of facts and the same legal issues, the only difference being the inclusion of Citadel as a defendant in the state case.

**7.** Citadel was a signatory to the Sales Agreement as to Section 8.01 only. That was the section which dealt with transfer of the liquor license.

the Bank and join Citadel under Rule 13 [8] because of the absence of diversity of citizenship necessary to a permissive counterclaim.[9] A Rule 14(a) Motion to join Citadel as a third-party defendant would also fail, as that rule provides for the joinder of a third-party defendant only where such a third-party defendant "is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff," and that could not be the basis of any possible third-party complaint by Larken against Citadel. Any such third-party action could only seek abrogation of the transfer of the liquor license.

### b. The policy basis for declining jurisdiction

In *Ingersoll–Rand*, 844 F.2d at 137, the Third Circuit stated that the *Colorado River* doctrine applies where "clear federal policy counsels against concurrent federal proceedings." The plaintiff argues that a stay or dismissal here is inappropriate under *Colorado River* because no federal policy would be furthered by such an action.

In both *Colorado River* and *Ingersoll–Rand*, the necessary federal policy was found in federal statutes (the McCarran Amendment and Securities Act of 1933, respectively) which prevented removal of a state case brought under that statute. Where removal is barred, the courts reasoned, allowing a party to file a concurrent federal case would undermine the bar to removal. An analogous rationale applies here.

In the view of this Court, the limits on diversity jurisdiction, codified at 28 U.S.C. § 1332, provide a policy basis for declining jurisdiction where a state court defendant seeks to prevent the complete adjudication of a non-diverse state court action by filing a federal action rather than a state-court counterclaim. The diversity rules express the policy that disputes between non-diverse parties should be heard in state courts if no federal question exists. This Court will not permit a litigant to circumvent the federal policy which prohibits removal of non-diverse state law cases by dropping the non-diverse party in the federal action, thereby preventing either court from adjudicating all claims between the parties, when the filing of a counterclaim in the state court action would permit the state court to adjudicate all claims between the parties.

### 4) *The order in which jurisdiction was obtained*

The fourth factor, the order in which jurisdiction was obtained, also weighs in favor of a dismissal or stay. The state claim was filed by Larken, Stein, and Coleman more than six weeks before the commencement of the federal suit.

### 5) *Substantive Law*

The fifth factor, which forum's substantive law controls, augers in favor of a dismissal or stay. While federal courts are fully competent to hear diversity cases based on state law, each of the issues here is controlled by the law of Pennsylvania, and it is not inappropriate that all of the claims be tried in a Pennsylvania court.

### 6) *Adequacy of the State Forum*

Similarly, the last factor, the adequacy of the state forum to protect the rights of the parties, favors dismissal or a stay. The Bucks County court is fully capable of protecting the parties substantively and procedurally, especially where only state claims are raised.

In looking to these factors, *Moses H. Cone* directs that

> the decision whether to dismiss [or stay] a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.

---

**8.** Such a counterclaim against the Bank and Citadel is not compulsory under Rule 13(a) because of the pending state action.

**9.** Both Larken and Citadel are citizens of Pennsylvania.

Looking to the value of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," this Court concludes that a dismissal or a stay is appropriate under *Colorado River.* Of particular weight is the fact that the state court is capable of resolving all of the disputes extant, while this Court can not do so because of the jurisdictional bar to the joinder of Citadel, a necessary part of the affording of complete relief.[10]

B.  Dismissal or Stay

Having determined that either a stay or dismissal is appropriate, the Court finds that dismissal is in the best interests of wise judicial administration, as the claim raised by plaintiffs here may be fully stated and resolved as a counterclaim in the state action.[11]  *See Ingersoll–Rand,* 844 F.2d at 138 ("dismissal under *Colorado River* contemplates that parallel state-court litigation will completely resolve the issues between the parties and that the federal court will have nothing further to do with the case.").[12]

The case will be dismissed pursuant to *Colorado River,* without prejudice.

---

**10.**  The District Courts of the Third Circuit have stayed or dismissed cases under *Colorado River* in a variety of circumstances.  *See Samaroo v. Samaroo,* 743 F.Supp. 309 (D.N.J.1990) (analysis of *Colorado River* factors similar to that of this Court); *Aetna Casualty & Surety Co. v. Sterner,* 700 F.Supp. 252 (E.D.Pa.1988) (declining jurisdiction on factor analysis similar to that relied on by this Court); *Dame v. Monahan,* 758 F.Supp. 1042 (M.D.Pa. March 14, 1991) (dismissing case, primary factor being inconvenience of forum).  *See also Nigro v. Blumberg,* 373 F.Supp. 1206 (E.D.Pa.1974) (pre-*Colorado River,* staying federal case pending concurrent state action).  *But see Southeastern Pennsylvania Transportation Authority v. American Coastal*

*Industries,* 682 F.Supp. 285 (E.D.Pa.1988) (rejecting stay).

**11.**  This Court perceives no impediment to the assertion of a counterclaim in the state-court action.  In the event the state court rules to the contrary, this Court will consider a Motion to Vacate the Order of Dismissal.

**12.**  In *Ingersoll–Rand,* the Third Circuit reversed the trial court's dismissal in favor of a stay. The determinative factor there was the near-completion of the state case, which did not include one of the federal claims.  The state case brought by defendants here is not at such an advanced stage.