Israel SALEI, Plaintiff,

v.

**BOARDWALK REGENCY CORPORATION, a foreign corporation, d/b/a Caesars Atlantic City, Defendant.**

No. 94–72239–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 23, 1996.

against Defendant Boardwalk Regency Corporation ("Defendant") in Oakland County Circuit Court. Counts one and two are based on Michigan law. Count three alleges that Defendant violated the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by obtaining a credit report for an impermissible purpose.

On June 8, 1994, Defendant removed this case from state to federal court based on the federal question raised by Plaintiff's third count. Defendant followed with a Motion to Dismiss filed on June 15, 1994. Plaintiff filed a Motion to Remand on June 22, 1994. Responses to both motions were filed on July 11, 1994. These two motions were referred to Magistrate Judge Thomas A. Carlson for resolution.

Magistrate Judge Carlson heard oral arguments on August 19, 1994, and considered supplemental briefs filed on August 29 and September 22. On November 10, 1994, he issued a Report and Recommendation advising the Court to grant Plaintiff's Motion to Remand, or, in the alternative, to deny Defendant's Motion to Dismiss. Defendant filed objections to the Report and Recommendation on December 1, 1994.

After reviewing the papers filed by the parties and the Magistrate Judge's Report and Recommendation, and for the reasons stated herein, the Court remands Plaintiff's state law claims to the Oakland County Circuit Court, retains jurisdiction over Plaintiff's federal claim, and denies Defendant's Motion to Dismiss with respect to the federal claim. In addition, because the Court finds that Plaintiff's state law claims are separate and independent from his federal claim, the Court must interpret 28 U.S.C. § 1441(c) in order to determine which of Plaintiff's claims to retain and which to remand. As discussed in detail below, the Court's attempt to apply 28 U.S.C. § 1441(c) leads to the conclusion that the provision is unconstitutional.

Robert V. Seymour, Southfield, Michigan, for plaintiff.

Jonathan T. Walton, Jr., Detroit, Michigan, for defendant.

### OPINION AND ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

ROSEN, District Judge.

### I. INTRODUCTION

On May 6, 1994, Plaintiff Israel Salei ("Plaintiff") filed a three-count complaint

### II. FACTUAL BACKGROUND

The Magistrate Judge's Report and Recommendation ably summarizes the series of events leading up to this action:

Defendant Boardwalk is a New Jersey corporation, with its principal place of business in New Jersey, and operates a gambling casino in Atlantic City under the name of "Caesars Atlantic City." In 1990 and 1991 Plaintiff visited Caesars on numerous occasions, gambled, and wrote a series of personal checks in exchange for gambling chips. When some of the checks were returned unpaid, Defendant filed suit in New Jersey state court to recover its losses; on February 6, 1992 it obtained a default judgment against Plaintiff.

In June 1992 Boardwalk filed suit in Oakland County Circuit Court against Plaintiff to enforce its New Jersey judgment. In July 1993, when the case was ready for trial, the parties entered into a settlement agreement, which, inter alia, directed Boardwalk to "discharge, set aside and vacate with prejudice the [New Jersey] judgment . . . within 10 days."

In February 1994, Salei filed a Motion for Contempt In Violating Court Order And To Impose Fine and Sanctions, in the Oakland County Circuit Court, alleging that Boardwalk had failed to discharge, set aside and vacate the New Jersey judgment, as agreed upon and ordered, and seeking for relief a finding of contempt, "an appropriate fine of not less that $10,-000 and, in addition, a continuing fine of not less than $200 per day until Caesars' contempt is cured, and to impose such additional sanctions as may be lawful and appropriate."

A hearing was held on the Motion for Contempt, on March 16, 1994, at which the Court held that "I won't hold them in contempt because I can understand the misunderstandings here between the two, but based upon [counsel for Salei's] representation as an officer of the Court, you will prepare the document that comports with this wording that you agreed to . . . ." (TR p. 7, filed by Defendant on 7/6/94). Boardwalk obtained the required discharge/set aside order in New Jersey on April 12, 1994.

Plaintiff then filed the instant Complaint in Oakland County Circuit Court, on May 6, 1994, against Defendant, alleging breach of the settlement agreement (Count I), violation of the Circuit Court's Order of July 21, 1993 ordering Defendant to discharge and set aside the New Jersey judgment (Count II), and violation of the federal Fair Credit Reporting Act (Count III). The Complaint was based upon Defendant's failure to set aside the New Jersey judgment for eight months (July 1993–April 1994), and upon alleged improperly motivated investigative consumer reports, and sought damages for Plaintiff's alleged injuries to his credit standing and reputation and for related financial losses.

(Magistrate Judge's Report and Recommendation at 1–3).

Neither Plaintiff's complaint nor any of his subsequent filings sets forth the factual predicate for his FCRA claim. According to Defendant, however, the claim is based on a credit report it obtained after Plaintiff filed his contempt motion in state court. Defendant alleges that it obtained the report to determine whether its action—or, in Plaintiff's view, failure to act—concerning the New Jersey judgment had any adverse impact on Plaintiff's credit rating.

### III. *PROCEDURAL BACKGROUND*

The Magistrate Judge's Report and Recommendation addresses two motions, Defendant's Motion to Dismiss and Plaintiff's Motion to Remand. Defendant's motion argues that, under principles of *res judicata*, Counts I and II of Plaintiff's complaint are barred by the rulings of the Michigan court in the prior state court action brought by Defendant. Defendant also contends that Count III of Plaintiff's complaint, the federal FCRA claim, must be dismissed because Defendant's minimal contacts with Michigan are insufficient to give this Court personal jurisdiction over Defendant. In turn, Plaintiff's Motion to Remand is based on the contention that removal of the instant action to this Court was both improper and unjustified.

The Magistrate Judge's Report and Recommendation advises this Court to remand the entire matter to state court. The Magistrate Judge reasoned that this Court has subject matter jurisdiction over all of Plaintiffs claims, both state and federal, under either 28 U.S.C. § 1367(a), which defines the scope of a federal court's supplemental juris-

diction, or 28 U.S.C. § 1441(c), which purports to confer subject matter jurisdiction over state law claims that are joined with a "separate and independent" federal claim. The Magistrate Judge next found that, regardless of the method of removal, this Court has the power to remand the entire matter, including the federal claim, to the Michigan court. Because the Magistrate Judge believed that Plaintiff's state law claims predominate over his federal FCRA claim, and because the FCRA claim can be heard by the state court, the Magistrate Judge recommended that the entire matter be remanded.

In the event that this Court decided to retain jurisdiction over some or all of Plaintiff's claims, the Magistrate Judge also addressed the merits of Defendant's Motion to Dismiss. The Magistrate Judge first found that Plaintiff's state law claims are not barred by the doctrine of *res judicata*, because the Michigan court had not resolved the issues that form the basis of Plaintiff's state law claims in the instant matter. Next, in light of Defendant's initiation of the prior state court action that, in the Magistrate Judge's view, ultimately gave rise to Plaintiff's FCRA claim, the Magistrate Judge found that this Court may exercise limited personal jurisdiction over Defendant for the purpose of addressing that federal claim. Accordingly, should this Court retain subject matter jurisdiction over this matter, the Magistrate Judge recommended that Defendant's Motion to Dismiss be denied in its entirety.

## IV. *ANALYSIS*

### A. *This Court Cannot Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims.*

■ In its Notice of Removal, Defendant quite properly states that this Court has subject matter jurisdiction over Plaintiff's FCRA claim pursuant to 28 U.S.C. § 1331, which confers federal question jurisdiction upon this Court. Defendant further cites 28 U.S.C. § 1367(a) as giving this Court subject matter jurisdiction over Plaintiff's two state law claims. Finally, although Defendant's Notice of Removal does not explicitly mention it, 28 U.S.C. § 1441(a) grants this Court the authority to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Accordingly, because this Court has original jurisdiction over Plaintiff's federal claim and also, according to Defendant, has jurisdiction over the state claims, § 1441(a) would authorize removal of the entire state court action.

■ The success of Defendant's attempt to keep this entire matter in federal court depends on this Court's authority to hear Plaintiff's state law claims. 28 U.S.C. § 1367(a) codifies the extent of this Court's supplemental jurisdiction[1] over such claims, and states in pertinent part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Because this Court unquestionably has origi-

---

1. The single term "supplemental jurisdiction" now encompasses the two judicially created doctrines formerly referred to as "pendent" and "ancillary" jurisdiction. 28 U.S.C. § 1367, enacted as part of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5113, was intended to codify these case law doctrines. *See generally* David D. Siegel, "Practice Commentary: The 1990 Adoption of § 1367, Codifying 'Supplemental' Jurisdiction," 28 U.S.C.A. § 1367 commentary (West 1993).

In the instant matter, by virtue of Defendant's contention that Plaintiff's state law claims go hand-in-hand with his federal claim, the Court is being asked to exercise what formerly would have been called "pendent" jurisdiction over Plaintiff's state law claims. As the Court discusses case law that shaped, and continues to influence, the extent of a federal court's supplemental jurisdiction, this opinion will occasionally use the term "pendent jurisdiction" as a reference to the lineage of this particular power to hear state law claims.

nal jurisdiction over Plaintiff's federal claim,[2] the first question the Court must address is whether Plaintiff's state law claims are "so related" to the federal claim as to form "part of the same case or controversy under Article III."

Recognition of pendent jurisdiction appears in Supreme Court opinions as early as 1824. In *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 823, 6 L.Ed. 204 (1824), Chief Justice Marshall stated:

[W]hen a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it.

More recently, in the landmark case of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court observed:

Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *," U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062. *The state and federal claims must derive from a common nucleus of operative fact.* But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138 (second emphasis added) (footnotes omitted).

■ Although *Gibbs* was handed down well before the enactment of 28 U.S.C. § 1367, it nonetheless controls the instant inquiry. In particular, because *Gibbs* described the scope of a federal court's pendent jurisdiction in terms of the judicial power conferred under Article III of the Constitution, and because § 1367 similarly limits supplemental jurisdiction solely by reference to the "case or controversy" language of Article III, *Gibbs* continues to define the extent of this Court's subject matter jurisdiction under § 1367. Thus, this Court may exercise supplemental jurisdiction over Plaintiff's state claims only if, in the words of *Gibbs*, Plaintiff's state and federal claims "derive from a common nucleus of operative fact."

The Court finds that Plaintiff's claims do not satisfy the *Gibbs* standard. At first glance, Plaintiff's state and federal claims appear to be related in a broad or causal sense. The entire relationship between the parties consists of Defendant's efforts to collect on a debt allegedly incurred when some of Plaintiff's checks were returned unpaid, and Plaintiff's subsequent attempts to force Defendant to take the steps Plaintiff believes are dictated by the settlement agreement between the parties. Plaintiff's claims, state and federal alike, all arose within this relationship; viewed from this broad perspective, then, those claims derive from a common set of facts.

■ Moreover, accepting Defendant's version of events,[3] the alleged FCRA violation

---

**2.** The Court agrees entirely with the Magistrate Judge's rejection of Plaintiff's argument that FCRA claims, once brought in a state court, may not be removed to federal court. In particular, the Magistrate Judge cited *Broom v. TRW Credit Data*, 732 F.Supp. 66 (E.D.Mich.1990), in which Judge Woods of this District addressed this very issue and concluded that FCRA actions are removable to federal court under 28 U.S.C. § 1441. This Court finds Judge Woods' analysis persuasive, and accordingly adopts it.

**3.** The *Gibbs* Court stated that "[t]he question of power will ordinarily be resolved on the pleadings," but also emphasized that "the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation." 383 U.S. at 727, 86 S.Ct. at 1139. Because Plaintiff's complaint sets forth none of the facts or circumstances surrounding his federal claim, the Court would be unable to meaningfully resolve the issue of supplemental jurisdiction solely by resort to the pleadings. For this reason, and because of the importance

occurred when Defendant obtained a copy of Plaintiff's credit report in order to better defend against Plaintiff's contempt motion in the prior Michigan suit. Consequently, the state and federal claims appear to be causally related; but for the alleged breach of a settlement agreement that forms the basis of Plaintiff's state claims, the alleged federal violation would not have occurred.

However, upon closer inspection, it is apparent that Plaintiff's state and federal claims do not share any of the same "operative facts." Put another way, the facts that are relevant to the resolution of Plaintiff's FCRA claim are completely separate and distinct from the facts that bear upon Plaintiff's state claims. The success of Plaintiff's FCRA claim depends not at all on whether Defendant breached a settlement agreement or violated a court order in the prior Michigan case. Rather, irrespective of whether the settlement agreement was breached, Plaintiff will prevail in his federal claim only if he can prove his allegation that Defendant obtained a credit report for an impermissible purpose. *See, e.g., Kennedy v. Border City Sav. & Loan Ass'n,* 747 F.2d 367 (6th Cir. 1984); *Hansen v. Morgan,* 582 F.2d 1214, 1218–20 (9th Cir.1978); *Zeller v. Samia,* 758 F.Supp. 775, 781–82 (D.Mass.1991). At most, the prior Michigan litigation between the parties would enter into the determination of Plaintiff's federal claim only if Defendant chose to argue that Plaintiff's contempt motion somehow justified procurement of a credit report. Even in that case, the possible merit of Plaintiff's contempt motion would be irrelevant; only the bare fact of prior litigation between the parties would be relevant to the FCRA claim.

Likewise, Plaintiff's state claims can be resolved without any consideration whatsoever of a possible FCRA violation. Both of Plaintiff's state claims rest upon the assertion that Defendant failed to properly and completely vacate the New Jersey judgment in accordance with the terms of the settlement agreement. The determination whether Defendant failed to carry out its part of the settlement agreement in no way depends upon whether Defendant obtained a credit report, let alone whether securing such a report would constitute a FCRA violation. At most, Defendant's procurement of a credit report could conceivably affect the amount of Plaintiff's damages under his state claims. Once again, though, it would be unnecessary to determine whether obtaining a credit report constituted a FCRA violation; rather, only the bare fact that Defendant obtained such a report could possibly be relevant to Plaintiff's state claims.

Quite simply, then, two distinct sets of "operative facts" surround Plaintiff's state and federal claims. One set of facts is relevant only to the federal claim, the other only to the state claims; thus, two separate factual inquiries are required in order to litigate the federal versus the state claims. Resolution of the federal claim necessitates inquiry into the facts surrounding Defendant's alleged procurement of the credit report, while resolution of the state claims requires inquiry into the terms of the settlement agreement and Defendant's alleged failure to comply with those terms.[4]

Under these circumstances, Plaintiff would not ordinarily be expected to bring both his state and federal claims in a single proceeding; rather, he could reasonably be expected to assert them in separate actions if he so chose. *Compare Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350–51, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988) (finding that state law claims fell within the district court's pendent jurisdiction because "they derived from the same nucleus of operative fact as the federal-law claim: CMU's dismissal of [the respondent employee]") *and Padilla v. City*

of making a correct determination regarding jurisdiction, the Court will take into account Defendant's unrebutted version of the events surrounding Plaintiff's FCRA claim.

**4.** Indeed, although Defendant contends that Plaintiff's state and federal claims arise from a common set of facts, thus justifying this Court's exercise of supplemental jurisdiction, Defendant also, and inconsistently, contends that all of the matters relevant to Plaintiff's state claims have already been adjudicated by the Michigan court in the prior suit between the parties. Plaintiff's FCRA claim clearly has not yet been addressed by any court. It follows that the federal claim must involve facts wholly separate from the facts surrounding the state claims.

*of Saginaw,* 867 F.Supp. 1309, 1312 (E.D.Mich.1994) (exercising supplemental jurisdiction over the plaintiff's state claims because "Plaintiff's complaint sets forth 25 'common allegations,' which are expressly incorporated and re-alleged in each of the eight counts," and because "all eight counts arise out of a single incident—the shooting of Plaintiff's decedent") *with Moralez v. Meat Cutters Local 539,* 778 F.Supp. 368, 370 (E.D.Mich.1991) (finding no power to exercise supplemental jurisdiction because "plaintiff's preempted federal claim, that his employment was terminated by Kroger contrary to a CBA, arises out of a factual scenario separate and distinct from that which brought about his battery claim"). Moreover, the "considerations of judicial economy, convenience, and fairness to litigants" cited as justifying the exercise of pendent jurisdiction in *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, do not apply with any great force here, where two separate factual inquiries would be required to resolve Plaintiff's state and federal claims.[5]

In conclusion, the Court finds that it lacks the power to reach out beyond Plaintiff's federal claim and exercise supplemental jurisdiction over Plaintiff's state claims. To do so would require inquiry into a distinct and independent set of events surrounding the settlement agreement between the parties in the prior Michigan litigation. The fact that such a separate inquiry would be necessary shows that the federal and state claims do not "derive from a common nucleus of operative fact." Accordingly, under *Gibbs* and its codification at 28 U.S.C. § 1367(a), Plaintiff's state claims do not lie within this Court's supplemental jurisdiction.

**B. *Plaintiff's Federal Claim is "Separate and Independent" Within the Meaning of 28 U.S.C. § 1441(c).***

In light of the conclusion that Plaintiff's state law claims do not lie within this Court's supplemental jurisdiction, Defendant cannot appeal to 28 U.S.C. § 1441(a) as a basis for the removal of this entire matter to federal court. However, another subsection of § 1441 appears to provide an alternate basis for removal of state court actions that include federal claims:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title [*i.e.,* federal question jurisdiction] is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c).

Thus, under § 1441(c), if Plaintiff's state court action includes a "separate and independent" federal claim that lies within this Court's federal question jurisdiction, the Court may remove the "entire case," including any state law claims. Defendant steadfastly insists that this Court can hear Plaintiff's state claims under its supplemental jurisdiction, and therefore does not raise the alternative argument that § 1441(c) would permit removal even if § 1367(a) would not. Plaintiff, however, *does* argue that § 1441(c) applies to the instant matter, at least if the Court concludes—as it did above—that

---

**5.** The *Gibbs* Court suggested yet another consideration that bolsters this Court's conclusion that Plaintiff's state claims lie outside the realm of supplemental jurisdiction. In *Gibbs,* the Court noted that both the exercise of pendent jurisdiction and the doctrine of *res judicata* find support in "the weighty policies of judicial economy and fairness." 383 U.S. at 724, 86 S.Ct. at 1137–38. In the instant matter, it is clear that adjudication of Plaintiff's federal claim will not have any sort of *res judicata* effect upon his state claims, and vice versa. Viewed from this perspective, Plaintiff's state and federal claims are again seen as separate and distinct.

Finally, Plaintiff complains of two separate and distinct injuries in his state and federal claims.

In his state claims, Plaintiff alleges an injury deriving from Defendant's purported breach of the settlement agreement reached in the prior state court litigation between the parties. In contrast, Plaintiff's federal claim asserts a separate injury caused by Defendant's alleged violation of the FCRA. *See American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951) (holding that claims are not "separate and independent" when the plaintiff has suffered only a single wrong). As discussed in detail below, this injury-based analysis of Plaintiff's claims is, in many ways, simply the flip-side of the analysis called for under *Gibbs.*

Plaintiff's federal claim is removable.[6] The Court agrees with Plaintiff, and finds that his federal claim is "separate and independent" from his state claims.

The phrase "separate and independent" first appeared in 1948, when § 1441(c) was enacted to replace a prior removal provision codified at 28 U.S.C. § 71 (1946 ed.):

> [A]nd when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district.

*See American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 9, 71 S.Ct. 534, 537–38, 95 L.Ed. 702 (1951) (comparing § 1441(c) to its predecessor provision); *see also Barney v. Latham*, 103 U.S. 205, 26 L.Ed. 514 (1880) (construing the previous provision). As noted by the Supreme Court in *Finn*, this prior language permitted removal of an entire multiple-party suit, regardless of whether it satisfied the requirement of complete diversity, once a federal court determined that the suit included a "separable federally cognizable controversy" involving a completely diverse subset of the parties. *Finn*, 341 U.S. at 11, 71 S.Ct. at 538.

When Congress enacted § 1441(c), it dropped the "controversy" language from the prior provision and substituted the requirement that the suit include a "separate and independent claim or cause of action." As explained in *Finn*, this change was intended to limit the availability of removal:

> A separable controversy is no longer an adequate ground for removal unless it also constitutes a separate and independent claim or cause of action. Congress has authorized removal now under § 1441(c) only when there is a separate and independent claim or cause of action. Of course, "separate cause of action" restricts removal more than "separable controversy." In a suit covering multiple parties or issues based on a single claim, there may be only one cause of action and yet be separable controversies. The addition of the word "independent" gives emphasis to congressional intention to require more complete disassociation between the federally cognizable proceedings and those cognizable only in state courts before allowing removal.

341 U.S. at 11–12, 71 S.Ct. at 538–39 (citations and footnotes omitted).

The *Finn* Court went on to construe the "separate and independent" language of § 1441(c).[7] In that case, Florence Finn, a Texas resident, sued three defendants in Texas state court for fire losses she sustained on her Texas property. 341 U.S. at 7–8, 71 S.Ct. at 537. Two of the defendants were out-of-state insurance companies; the third was their agent, a Texas resident. 341 U.S. at 7–8, 71 S.Ct. at 537. Finn argued that the insurance companies were liable for the loss or, alternatively, that the agent neg-

---

**6.** Plaintiff's preference for removal pursuant to § 1441(c), and Defendant's corresponding preference for removal pursuant to a combination of § 1441(a) and § 1367(a), undoubtedly stems from the perceived difference in this Court's remand power under these two removal mechanisms. If a district court finds that it has supplemental jurisdiction over a state law claim pursuant to § 1367(a), then some case law suggests that the court may only decline to exercise that jurisdiction upon one of the four specific grounds listed in § 1367(c). *See, e.g., Kabealo v. Davis*, 829 F.Supp. 923, 927 (S.D.Ohio 1993). Moreover, § 1367 apparently does not authorize remand of federal claims. *Kabealo*, 829 F.Supp. at 927.

In contrast, if a party removes an action pursuant to § 1441(c), that provision supplies a much more open-ended and discretionary remand power: "the district court . . ., in its discretion, may remand all matters in which State law predominates." Apart from the greater discretion this provision evidently confers, some courts have concluded that § 1441(c) authorizes the remand of an *entire action*, including federal claims. *See, e.g., Moralez v. Meat Cutters Local 539*, 778 F.Supp. 368, 370–71 (E.D.Mich.1991). Thus, since Plaintiff here seeks remand of the entire matter to state court, § 1441(c) offers a more promising avenue of removal and subsequent remand.

**7.** Although § 1441(c) has been amended since *Finn* was decided in 1951, the provision's "separate and independent" language has remained unmodified since its original enactment. Accordingly, *Finn* still stands as the Supreme Court's definitive interpretation of that language.

ligently failed to obtain a policy on her behalf. 341 U.S. at 14–15, 71 S.Ct. at 540–41. The insurance companies removed based on diversity of citizenship, arguing that Finn's claims against them were separable from those against the agent. 341 U.S. at 8, 71 S.Ct. at 537.

Upon considering the change in statutory language discussed above, the Supreme Court rejected the insurance companies' contention, and held that removal of the suit pursuant to § 1441(c) was improper. 341 U.S. at 16, 71 S.Ct. at 541. The Court first announced a standard for determining whether the "separate and independent" requirement of § 1441(c) is satisfied:

> Considering the previous history of "separable controversy," the broad meaning of "cause of action," and the congressional purpose in the revision resulting in 28 U.S.C. § 1441(c), ..., we conclude that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).

341 U.S. at 13–14, 71 S.Ct. at 540 (citation and footnote omitted). Applying this test to the matter before it, the Court found that Finn had suffered only one injury, and therefore had stated only a single cause of action:

> The past history of removal of "separable" controversies, the effort of Congress to create a surer test, and the intention of Congress to restrict the right of removal lead[ ] us to the conclusion that separate and independent causes of action are not stated. The facts in each portion of the complaint involve [the insurance agent], the damage comes from a single incident. The allegations in which [the agent] is a defendant involve substantially the same facts and transactions as do the allegations in the first portion of the complaint against the foreign insurance companies. It cannot be said that there are separate and independent claims for relief as § 1441(c) requires. Therefore, we conclude there was no right to removal.

341 U.S. at 16, 71 S.Ct. at 541.

The Sixth Circuit discussed and applied *Finn* in *Union Planters Nat'l Bank v. CBS,* *Inc.,* 557 F.2d 84 (6th Cir.1977). In that case, the plaintiff bank had made loans to Stax Records, secured by the guaranties of defendant Stax and two individual co-defendants. 557 F.2d at 86. When Stax defaulted on these loans, the bank brought suit in Tennessee state court seeking recovery on the guaranties or, alternatively, seeking recovery from co-defendant CBS under the theory that CBS had committed tortious acts that had destroyed the ability of Stax to pay its debts to the bank. 557 F.2d at 86. Because no federal question was involved, and because the plaintiff bank and all of the defendants other than CBS were citizens of Tennessee, CBS appealed to § 1441(c) as the only possible basis for removing the suit to federal court. 557 F.2d at 86.

The Sixth Circuit held that the action did not qualify for removal under § 1441(c). After discussing *Finn* at length, the court found that the principles articulated in that case dictated the conclusion that the bank had not stated a separate and independent claim against CBS:

> The cause of action against it, CBS contends, not only differs in legal character from the action against the Tennessee defendants, but it is based upon different events and transactions. The claims against it, CBS says, are based upon misrepresentation and fraud in connection with the subordination agreements as well as interference with contract, while the claim against the Tennessee defendants relates to loan transactions. CBS asserts that because the claims are based on different events, they are distinct claims. However, where a plaintiff seeks to recover for a single injury arising from a series of interrelated events, and whether he sues several defendants jointly, severally, jointly and severally, or alternatively, he is not asserting separate and independent claims under 1441(c).... We conclude in the present case that the alleged transactions are sufficiently interlocked to come within the *Finn* rationale and thus the case is not removable.

557 F.2d at 89–90 (citations and footnote omitted).

■ Applying *Finn* and *Union Planters* to the instant matter, the Court finds that Plaintiff's federal claim is indeed "separate and independent" within the meaning of § 1441(c). The injury suffered by Plaintiff as a result of Defendant's alleged FCRA violation is distinct from the injury suffered as a result of Defendant's alleged failure to carry out the terms of the settlement agreement. On one hand, Plaintiff's FCRA claim seeks to vindicate Plaintiff's interest in seeing that his credit information remains confidential and restricted to appropriate uses. *See Hansen v. Morgan,* 582 F.2d 1214, 1220 (9th Cir.1978) (discussing the consumer interests protected by the FCRA). If Defendant obtained a credit report for a purpose deemed improper under the FCRA, Plaintiff has suffered a legally redressable injury regardless of the merit of his state claims. By the same token, if Defendant breached the settlement agreement or violated a Michigan court order, any remedies provided under Michigan law will be available regardless of whether Defendant committed any FCRA violation. Plaintiff has alleged two separate and independent injuries, and, should he prevail, would be entitled to two separate recoveries.[8]

Moreover, the Court's earlier analysis of the distinct factual bases for Plaintiff's federal and state claims also supports the conclusion that those claims are "separate and independent." The facts and transactions involved here are not "interlocked," but rather are, at most, causally related. As discussed earlier, the facts necessary to establish the alleged breach of the settlement agreement do not overlap to any significant extent with the facts necessary to establish the alleged FCRA violation. Plaintiff's complaint does not allege a "series of interrelated events," as in *Union Planters;* instead, he sets forth two discrete sets of events that are only broadly related.

It is not surprising that many of the same factors that lead to the conclusion that Plaintiff's state claims do not lie within the Court's supplemental jurisdiction also lead to the conclusion that Plaintiff's state and federal claims are separate and independent under § 1441(c). The inquiries called for under *Gibbs*—i.e., whether Plaintiff's various claims derive from a common nucleus of operative fact—and under *Finn*—i.e., whether Plaintiff's claims assert a single wrong arising from an interlocked series of transactions—necessarily require similar examinations of the factual bases underlying Plaintiff's claims. Indeed, the case law supports the notion that the outcomes of the *Gibbs* and *Finn* inquiries are mutually exclusive—or, in other words, that state claims lying within a federal court's supplemental jurisdiction cannot also be "separate and independent" from a federal claim under § 1441(c). *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 354, 355 n. 11, 108 S.Ct. 614, 621 & n. 11, 98 L.Ed.2d 720 (1988) (stating that "pendent claims are not 'separate and independent' within the meaning of the removal statute," and that § 1441(c) "do[es] not apply to cases over which a federal court has pendent jurisdiction"); *Williams v. Huron Valley Sch. Dist.,* 858 F.Supp. 97, 99–100 (E.D.Mich. 1994).[9] Thus, the Court's determination that

---

8. Defendant points out that Plaintiff has alleged identical injuries under all three of the counts in his complaint: "injuries to his credit standing, injuries to his reputation, financial losses and injuries and related losses, damages and injuries." The Court agrees that Plaintiff's complaint was not drafted with the utmost precision. Nonetheless, Plaintiff's state and federal claims allege distinct injuries. Under the admittedly vague allegations in his complaint, Plaintiff's FCRA claim states an injury that could best be termed as a sort of "invasion of informational privacy." *See Hansen,* 582 F.2d at 1217 (noting that the plaintiffs' complaint alleged that the defendants' failure to comply with the FCRA had resulted in a violation of their right to privacy). In contrast, Plaintiff's state claims assert, in essence, that Defendant's failure to properly vacate the New Jersey judgment resulted in harm to his credit standing and reputation.

9. There are two possible ways in which this hypothesis of mutual exclusivity could be wrong. First, a set of claims could satisfy *both* the *Gibbs* test and the § 1441(c) "separate and independent" requirement. At least one court apparently believed that this situation could occur; in *Moore v. DeBiase,* 766 F.Supp. 1311, 1315, 1321 n. 17 (D.N.J.1991), the court found both that the plaintiff's state law claims fell within the court's pendent jurisdiction and that "[r]emoval under section 1441(c) appears to have been appropriate." The court did not address the language in *Cohill* suggesting that this could not be so. Moreover, this Court shares the belief of Judge

Plaintiff's state and federal claims are separate and independent from one another is at least strongly presaged, if not dictated, by its earlier determination that Plaintiff's state claims cannot be reached under the Court's supplemental jurisdiction.

### C. *Removal of Plaintiff's Entire State Lawsuit Pursuant to § 1441(c) Would Exceed the Court's Jurisdiction Under Article III of the Constitution.*

The Court having agreed with Plaintiff's argument that his federal and state claims are separate and independent from one another, Plaintiff now invites the Court to remand the entire matter to state court. But, one rather large step remains to be taken before the question of remand can be considered: namely, in order to *remand* any or all of Plaintiff's claims pursuant to § 1441(c), the Court must first find that those claims may properly be *removed* pursuant to § 1441(c). The Court finds that taking this step would exceed the authority conferred upon federal courts under Article III of the Constitution.

Notwithstanding § 1441(c) or any other statutory provision, the touchstone of this Court's jurisdiction is located in Article III, § 2 of the Constitution:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const. art. III, § 2, cl. 1. Simply stated, this language in Article III sets forth the outermost boundaries of this Court's limited jurisdiction.

██ In particular, because the parties here appeal to this Court's federal question jurisdiction under 28 U.S.C. § 1331,[10] the instant matter can be heard by this Court only if it can be construed as a "Case[ ] ... arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. Const. art. III, § 2, cl. 1. This point is of critical importance because, as stated by the Supreme Court, "[i]t is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978).

Because Article III remains the standard by which all statutory grants of jurisdiction must be measured, the Court must now revisit *Gibbs,* in which the Supreme Court defined the scope of a federal court's pendent jurisdiction by resort to the notion of an Article III "case." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). At the time *Gibbs* was decided, no Act of Congress empowered federal courts to exercise pendent jurisdiction over state law claims.

Cleland of this District that this aspect of *Moore* is highly questionable. *Padilla v. City of Saginaw,* 867 F.Supp. 1309, 1314 (E.D.Mich.1994).

Next, it is at least theoretically possible that a set of state and federal claims asserted in a single state court action could be too *unrelated* to satisfy the *Gibbs* test, and yet also be too *related* to qualify as "separate and independent" under § 1441(c). For an argument that *Gibbs'* broad definition of a "case" forecloses this intermediate possibility, see Douglas D. McFarland, The Unconstitutional Stub of Section 1441(c), 54 Ohio St.L.J. 1059, 1079–80 (1993). In any event, no

existing federal statute would authorize the removal of such a "somewhat related" action.

**10.** The Court notes that the parties here apparently are of diverse citizenship: Plaintiff's complaint states that he is a Michigan resident, and the Magistrate Judge's Report and Recommendation states that Defendant is a New Jersey corporation with its principal place of business in New Jersey. Neither party, however, has asserted diversity of citizenship as a possible basis for this Court's jurisdiction, perhaps because the requisite $50,000 amount in controversy cannot be established. *See* 28 U.S.C. § 1332(a).

Thus, when the *Gibbs* Court stated that a collection of state and federal claims qualifies as a "case" only if those claims all "derive from a common nucleus of operative fact," 383 U.S. at 725, 86 S.Ct. at 1138, this definition of a "case" could *only* have resulted from the Court's construction of Article III, § 2. And, if *Gibbs* itself was not clear enough on that point, the Supreme Court has more recently affirmed that "*Gibbs* delineated the constitutional limits of federal judicial power." *Kroger*, 437 U.S. at 371, 98 S.Ct. at 2401.

This Court thus confronts a puzzle of constitutional dimensions. The Court first concluded that Plaintiff's claims do not satisfy the *Gibbs* standard, because they do not all "derive from a common nucleus of operative fact." It must follow that Plaintiff's two distinct sets of claims, if taken together, exceed the boundaries of a constitutional "case." The Court then concluded that Plaintiff's federal claim is "separate and independent" from his state claims within the meaning of § 1441(c). That "separate and independent" requirement being satisfied, § 1441(c) purports to authorize removal of the "entire case" to this Court. Yet, in light of the Court's determination that *Gibbs* has not been satisfied, Plaintiff's entire state court "case" is broader in scope than the "cases" this Court is permitted to hear under Article III, § 2 of the Constitution. Accordingly, if § 1441(c) is viewed, upon an entirely straightforward reading of its plain language, as authorizing removal of Plaintiff's entire state court action to this Court, then § 1441(c) purports to empower this Court to undertake an unconstitutional act. *See Cedillo v. Valcar Enters. & Darling Delaware Co.*, 773 F.Supp. 932, 935 n. 3 (N.D.Tex.1991) (noting the "potentially troublesome" constitutional issues raised by § 1441(c)); *see also* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3724, at 402–03 (2d ed. 1985) ("Yet another problem ... is whether Section 1441(c) is constitutional in federal question cases.").

Although not strictly relevant to the instant matter, it is nevertheless instructive to review the history of § 1441(c) to see how this constitutional dilemma emerged. As noted earlier, the Supreme Court discussed the purposes behind the 1948 enactment of 28 U.S.C. § 1441(c) in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 9–12, 71 S.Ct. 534, 537–39, 95 L.Ed. 702 (1951). The *Finn* Court found that Congress intended § 1441(c) to limit the availability of removal by preventing federal courts from accepting the removal of entire state court suits once they had identified some "separable controversy" that was "wholly between citizens of different states." 341 U.S. at 10–11, 71 S.Ct. at 538. In light of this congressional purpose, the Court construed the "separate and independent" language of § 1441(c) as imposing an additional requirement for removal, beyond the mere presence of a "separable controversy" among diverse parties. 341 U.S. at 11–12, 71 S.Ct. at 538–39. Thus, *Finn* indicates that both the original § 1441(c) and its predecessor provision at 28 U.S.C. § 71 primarily, if not solely, contemplated removal on the basis of diversity of citizenship. *Cf. Thomas v. Shelton*, 740 F.2d 478, 483 (7th Cir.1984) ("Although [the pre–1990] section 1441(c), unlike the old section 71, is not explicitly limited to diversity cases, its principal and maybe only application is to such cases.").

In 1990, Congress amended § 1441(c) to confine its use solely to those state court suits in which the presence of a federal question, rather than diversity of citizenship, provides the potential basis for removal. As originally enacted in 1948, the provision had read:

> Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

Act of June 25, 1948, ch. 646, 62 Stat. 937 (codified as amended at 28 U.S.C. § 1441(c)). In a report issued in 1990, the Federal Courts Study Committee recommended repeal of § 1441(c), but Congress chose instead to limit its application to state court suits

presenting a federal question. *See generally Moore v. DeBiase*, 766 F.Supp. 1311, 1315–19 (D.N.J.1991) (surveying the work of the Federal Courts Study Committee and the legislative history of the 1990 amendment to § 1441(c)). A House Report explained the reasons for retaining the provision in its present form rather than repealing it altogether:

> The amendment would ... retain the opportunity for removal in the one situation in which it seems clearly desirable. The joinder rules of many states permit a plaintiff to join completely unrelated claims in a single action. The plaintiff could easily bring a single action on a federal claim and a completely unrelated state claim. The reasons for permitting removal of federal question cases appl[y] with full force. In addition, the amended provision could actually simplify determination of removability. In many cases the federal and state claims will be related in such a way as to establish pend[e]nt jurisdiction over the state claim. Removal of such cases is possible under Sec. 1441(a). The amended provision would establish a basis for removal that would avoid the need to decide whether there is pend[e]nt jurisdiction.

H.R.Rep. No. 734, 101st Cong., 2d Sess. 23 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6802, 6860, 6869; *see also Moore*, 766 F.Supp. at 1318 n. 11 (noting that an "expansive" reading of this passage raises constitutional concerns).

■ If restricted to the diversity context, § 1441(c) would not necessarily raise the constitutional issue that confronts this Court. Because Article III, § 2 has been construed as requiring only "minimal" rather than "complete" diversity of citizenship, Congress may properly confer diversity jurisdiction whenever the citizenship of any one of the plaintiffs differs from the citizenship of any one of the defendants. *See State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530–31, 87 S.Ct. 1199, 1203–04, 18 L.Ed.2d 270 (1967). Thus, so long as minimal diversity is

present, and if a federal statute so provides, a federal court presumably could exercise jurisdiction over a collection of only marginally related claims without raising constitutional concerns.[11]

■ This does not hold true, however, in matters that can only reach federal court because of the presence of a federal question. In this latter situation, Article III confers jurisdiction only to the extent that a collection of claims constitutes a single "case." The crux of the problem with § 1441(c) in its present form, then, is that the provision purports to confer jurisdiction in excess of the limit specifically set forth in Article III, § 2 by the framers of the Constitution.

Courts and commentators have suggested two ways to avoid the constitutional dilemma presented by § 1441(c). First, appealing to the maxim that courts should endeavor to construe statutes so that they pass constitutional muster, some courts have reasoned that § 1441(c) should not be read as authorizing removal of state law claims that are "totally unrelated" to a federal claim. *See Moralez v. Meat Cutters Local 539*, 778 F.Supp. 368, 370 n. 2 (E.D.Mich.1991); *Moore v. DeBiase*, 766 F.Supp. 1311, 1319 n. 13 (D.N.J.1991). These courts opine, in effect, that § 1441(c) can be constitutionally invoked if a requirement of "sufficient relatedness" is read into the provision. *See Moore*, 766 F.Supp. at 1319 n. 13.

■ This Court respectfully disagrees with the contention that § 1441(c) can be construed in a way that renders the provision both constitutional and serviceable. The only test of "relatedness" that matters, constitutionally speaking, is the test stated in *Gibbs;* pursuant to Article III, a court may not exercise jurisdiction over state claims unless those claims share a "common nucleus of operative fact" with some federal claim. If a state claim is not sufficiently related to a federal claim to satisfy this test, it is not part of the same constitutional "case" as the federal claim, and hence may not be addressed in federal court alongside the federal claim.

---

11. Even in this situation, however, it has been suggested that § 1441(c) might authorize an unconstitutional exercise of federal court jurisdiction. *See* John H. Lewin, The Federal Courts' Hospitable Back Door—Removal of "Separate and Independent" Non–Federal Causes of Action, 66 Harv.L.Rev. 423 (1953).

*Cf. Thomas v. Shelton,* 740 F.2d 478, 483 (7th Cir.1984). Consequently, any test of "relatedness" that does not go as far as the *Gibbs* test cannot save § 1441(c) from constitutional infirmity.

■ Further, statutes must be read as written, not as we would wish them to be written. Given the plain language and history of § 1441(c), only the most Procrustean effort of statutory construction could find within that provision an implicit requirement that claims be sufficiently related to satisfy the *Gibbs* standard. Such forced construction not only misconceives the judicial task but also gains nothing, because the resulting provision, with its juxtaposed requirements that claims be "separate and independent" and yet still "related," would at best confer only an utterly redundant removal power. If claims are so related that they satisfy the *Gibbs* standard, then they can be removed to federal court by applying § 1441(a) in combination with § 1367(a); there is simply no need to invoke § 1441(c) in that situation.[12] Moreover, as noted earlier, this Court doubts whether a set of claims that satisfies *Gibbs,* and thus falls within a federal court's pendent jurisdiction, could also satisfy the "separate and independent" requirement of § 1441(c). *See Padilla v. City of Saginaw,* 867 F.Supp. 1309, 1314–15 (E.D.Mich.1994).

The Court thus finds that § 1441(c), if construed to incorporate the *Gibbs* standard, would be reduced to a nullity. Surely Congress did not intend such a result when it chose to retain an amended version of the provision in 1990. Proceeding under the assumption that Congress meant to achieve something of an affirmative nature when it opted to amend rather than repeal § 1441(c), this Court is ineluctably drawn to the conclusion that the objective Congress sought to attain is constitutionally impermissible.

Recognizing the insurmountable obstacle *Gibbs* poses to a construction of § 1441(c) that is both constitutional and tenable, some commentators contend that *Gibbs* should not be strictly applied in the context of removal. In particular, Professor James Moore's treatise on federal practice offers the most extended defense of the constitutionality of § 1441(c). Professor Moore starts with the general proposition that "[a] broad and liberal construction of Article III of the Constitution, in favor of federal judicial power is proper; its language has a living flexibility." 1A James W. Moore & Brett A. Ringle, Moore's Federal Practice ¶ 0.163[3], at 317 (2d ed. 1993). He then argues that *Gibbs,* which considered the scope of a federal court's *original* jurisdiction, does not necessarily place the same limit on a federal court's *removal* jurisdiction. *Id.* at 320–21; *see also* Douglas D. McFarland, The Unconstitutional Stub of Section 1441(c), 54 Ohio St.L.J. 1059, 1083–85 (1993) (presenting and critiqueing Professor Moore's argument in greater detail).

This Court believes that this argument is flawed at both its inception and its conclusion. First, the notion that Article III should be liberally construed is flatly at odds with the constitutional establishment of a federal government of *limited* powers. The Supreme Court has appealed to this constitutional vision in explaining why the removal statutes are to be narrowly construed:

> [T]he policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation. The power reserved to the states under the Constitution

---

**12.** This same reasoning negates the suggestion that federal courts may properly remove the "entire case" pursuant to § 1441(c) for the limited purpose of determining which claims can be treated as part of a single constitutional "case;" after this initial determination, the claims lying outside the "case" can then be immediately remanded to state court. *See Moore,* 766 F.Supp. at 1320 n. 16; *Samaroo v. Samaroo,* 743 F.Supp. 309, 317 (D.N.J.1990).

As an initial matter, nothing in § 1441(c) supports the notion of such "limited purpose" removal; rather, it would seem that removal of an "entire case" requires jurisdiction over the "entire case," even if that jurisdiction will only be retained for a short time. Indeed, the fact that § 1441(c) provides for remand "in [the court's] discretion" seems inconsistent with an interpretation in which remand would be dictated by jurisdictional concerns. Finally, the Court finds this suggested "remove and remand" approach unhelpful, because the claims that remain in federal court could just as well have been removed by applying a combination of § 1441(a) and § 1367(a). This last point will be discussed further below.

to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 [ (1934) ].

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *see also Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984) (cautioning that, because of the constitutional allocation of powers between the state and federal governments, "[a] federal court is not a general repository of judicial power").

This Court must also reject the suggestion that *Gibbs* might not define the outer extent of a constitutional "case" in matters involving a federal court's removal rather than original jurisdiction. As an initial matter, Supreme Court cases subsequent to *Gibbs* repudiate that view. Although the Court has reserved the question whether the *Gibbs* standard carries over to other contexts, the Court has never suggested, nor even hinted, that any different definition of a "case" that might be adopted in those other contexts would be broader than the definition stated in *Gibbs*. *See Finley v. United States*, 490 U.S. 545, 548–51, 109 S.Ct. 2003, 2006–08, 104 L.Ed.2d 593 (1989) (discussing the application of *Gibbs* in several prior cases, and stating that *Gibbs* defined a federal court's pendent claim jurisdiction "to the full extent permitted by the Constitution"); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 371, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1978) ("It is apparent that *Gibbs* delineated the constitutional limits of federal judicial power."); *Aldinger v. Howard*, 427 U.S. 1, 12–15, 96 S.Ct. 2413, 2419–21, 49 L.Ed.2d 276 (1976) (noting the problems with extending *Gibbs* to actions involving pendent-party jurisdiction).

■ Moreover, the constitutional command that federal courts must exercise juris-dictional restraint is even more compelling in the context of removal than in the context of original jurisdiction. The decision whether to remove a suit to federal court directly implicates the constitutional distribution of judicial power between federal and state courts. The Federalist Papers clearly reveal the framers' intention that the ability of the federal courts to wrest jurisdiction from state tribunals be sharply circumscribed:

I shall lay it down as a rule that the State courts will *retain* the jurisdiction they now have, unless it appears to be taken away in one of the enumerated modes.

The only thing in the proposed Constitution, which wears the appearance of confining the causes of federal cognizance to the federal courts, is contained in this passage: "The JUDICIAL POWER of the United States *shall be vested* in one Supreme Court, and in *such* inferior courts as the Congress shall from time to time ordain and establish." This might either be construed to signify that the supreme and subordinate courts of the Union should alone have the power of deciding those causes to which their authority is to extend; or simply to denote that the organs of the national judiciary should be one Supreme Court, and as many subordinate courts as Congress should think proper to appoint; or in other words, that the United States should exercise the judicial power with which they are to be invested, through one supreme tribunal, and a certain number of inferior ones to be instituted by them. The first excludes, the last admits, the concurrent jurisdiction of the State tribunals; and as the first would amount to an alienation of State power by implication, the last appears to me the most defensible construction.

... I hold that the State courts will be divested of no part of their primitive jurisdiction further than may relate to an appeal; and I am even of opinion that in every case in which they were not expressly excluded by the future acts of the national legislature, they will of course take cognizance of the causes to which those acts may give birth. This I infer from the

nature of judiciary power, and from the general genius of the system.

The Federalist No. 82, at 492–93 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis in original).

■■■■ The federal judiciary must respect the important objectives the framers sought to achieve when they carefully crafted our federal system and its concomitant national government of limited powers. Accordingly, a suit should not be removed from state court unless some important federal interest will be served thereby, and unless Congress has explicitly identified that interest. *Cf. Boys Markets, Inc. v. Retail Clerk's Union, Local 770,* 398 U.S. 235, 247, 90 S.Ct. 1583, 1590, 26 L.Ed.2d 199 (1970) ("[T]here is no indication that Congress intended by the removal mechanism to effect a wholesale dislocation in the allocation of judicial business between the state and federal courts.") Indeed, in a case such as the instant one, where the state claims are separate and independent from the federal claim, the federal interest in removing those unrelated state claims is clearly lacking.[13]

■■■■ Further, there is simply less need to assert jurisdiction in the context of removal. A federal court contemplating removal need not fear that the parties will otherwise be completely deprived of a forum; rather, if removal is unavailable, the parties may simply proceed with their existing state court action. In the instant matter, for example, the Michigan courts are clearly capable of addressing all of Plaintiff's claims, state and federal alike. In short, the right of removal being patently less important than the right to seek judicial redress in the first instance,

this Court sees no reason why its removal jurisdiction should be broader than its original jurisdiction.

To be sure, constitutional considerations aside, § 1441(c) does offer some benefits that cannot be obtained in its absence. First, § 1441(c) arguably makes it more difficult for a plaintiff to defeat removal by adding a state claim unrelated to any federal claim. *But see Thomas v. Shelton,* 740 F.2d 478, 483 (7th Cir.1984) (doubting whether, in the absence of § 1441(c), adding an unrelated state claim would prevent a federal court from removing the federal claim). Next, judicial economy might be served by permitting a federal court to address all of the claims asserted by the parties, even if some claims are unrelated to the others.[14] In addition, the House Report quoted earlier opined that § 1441(c) reduces litigation over removal because a federal court need not decide whether state claims lie within its supplemental jurisdiction.[15] Finally, as noted earlier, § 1441(c) appears to afford federal courts substantial discretion in determining which claims to retain and which to remand.

■■■■ In the end, however, the command of the Constitution must prevail over any appeal to the benefits potentially provided by § 1441(c). Such salutary effects as judicial economy or convenience cannot save a statutory provision that defies the jurisdictional limits set forth in Article III, § 2. Certainly, courts are not free to ignore the restraints imposed upon them by the Constitution simply because a statute serves judicial efficiency. Neither may this Court resort to contorted statutory construction

---

**13.** In fact, the particular nature of the state claims in this matter—*i.e.,* that Defendant has failed to comply with a settlement agreement and a court order in a prior Michigan action—provides an even stronger argument for leaving these claims in state court. Surely the Michigan court is uniquely suited to determine whether Defendant has complied with that court's prior order.

**14.** Of course, the gains likely are less substantial when the claims are truly unrelated, since, by assumption, the issues that must be addressed in order to resolve the unrelated claims will themselves be separate and unrelated. Moreover, this gain in judicial economy can still be achieved in

the *state* court. *Cf. Aldinger v. Howard,* 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276 (1976).

**15.** The Court points out that the instant litigation belies this claim. The force with which the parties debate whether § 1367(a) or § 1441(c) applies to Plaintiff's state claims evinces their shared belief that these two removal mechanisms are accompanied by significantly different remand powers. As noted earlier, this belief finds support in the case law. Thus, even if parties agree that some sort of removal is proper, they still have an incentive to argue about the basis for removal.

where, as here, the congressional purpose has been plainly revealed in the language and history of § 1441(c). It is the role of Congress, rather than this Court, to enact legislation within constitutional limits, and to address any deficiencies resulting from the unavailability of the removal and remand mechanisms provided under § 1441(c). This Court, therefore, must forgo any attempt to "fix" § 1441(c) through a trick of statutory construction when it is evident that the primary objective sought to be achieved by that provision is forbidden under Article III of the Constitution.

 In sum, the Court finds that the removal provisions of § 1441(c) violate Article III, § 2 of the Constitution. Because Plaintiff's state claims are wholly "separate and independent" from his federal claim, they simply do not lie within this Court's federal question jurisdiction. Indeed, the Court believes that any state claims that are sufficiently "separate and independent" from a federal claim to qualify for removal under § 1441(c) cannot lie within a federal court's federal question jurisdiction. Consequently, because § 1441(c) in its present form expressly applies only to state court actions that include a federal question, that provision is unconstitutional.

### D. *Section 1441(a) Permits Removal of Plaintiff's Federal Claim.*

 To this point, the Court has found that Plaintiff's state law claims cannot be reached under § 1367(a), and that reaching those claims through § 1441(c) represents an unconstitutional exercise of subject matter jurisdiction. Under more conventional circumstances, having determined that the entire state action cannot be removed, the

Court would simply remand the entire matter to state court pursuant to 28 U.S.C. § 1447(c). However, in view of the Court's invalidation of § 1441(c), the Court believes that a different course of action is more appropriate. In particular, applying the same principles that informed its construction of § 1441(c), the Court finds that § 1441(a) authorizes the separate removal of Plaintiff's federal claim.

Section 1441(a) permits a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In the instant matter, had Plaintiff asserted his FCRA claim in a separate state court action, Defendant undoubtedly could have invoked § 1441(a) as a basis for removal of this separate action. Similarly, had Plaintiff combined this FCRA claim with state claims falling within a federal court's supplemental jurisdiction under § 1367(a) (*i.e.*, claims sharing a common nucleus of operative fact), Defendant still could have invoked § 1441(a) as a basis for removal. Of course, had this Court upheld the validity of § 1441(c), Defendant would have been able to remove this matter to federal court, regardless of the relationship between Plaintiff's state and federal claims. Finally, under any of these scenarios, this Court likely would have been able to remand Plaintiff's state claims, because neither of those claims presents any issues involving federal law.[16] Accordingly, the Court might well have ended up hearing Plaintiff's federal claim and remanding the state claims.

The question becomes whether the constitutionally-mandated unavailability of § 1441(c) forecloses this result. Although this admittedly is a close question, as well as

---

16. This last proposition is most controversial under the scenario in which Plaintiff's state law claims lie within the Court's supplemental jurisdiction. In that event, 28 U.S.C. § 1367(c) would govern the remand determination:

The district courts may decline to exercise supplemental jurisdiction over a [pendent] claim ... if—
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In the instant matter, subsections (1) and (4) seem to offer the best justifications for remand of Plaintiff's state claims. However, because Plaintiff's state claims do not qualify for removal under § 1367(a), the Court need not resolve this question.

a question of first impression, the Court finds that it does not. The Court's reasoning is as follows. First, the Court earlier determined that Plaintiff's federal claim lies within a separate constitutional "case" from his state claims. Indeed, this is the very reason why removal of the entire state court action pursuant to § 1441(c) is constitutionally impermissible. Next, the Court notes that § 1441(a) authorizes removal of "any civil action ... of which the district courts of the United States have original jurisdiction." Finally, the Court concludes that Plaintiff's federal claim, because it is a separate constitutional "case," constitutes a separate "civil action" within the meaning of § 1441(a), and hence is separately removable.

The Court readily acknowledges that this conclusion does not flow ineluctably from either case law or unambiguous statutory language. Two aspects of the existing law of removal render the lack of case law on this subject utterly unsurprising. First, because *Gibbs* broadly defined the scope of pendent jurisdiction, and because § 1367(a) codified this result, most state court actions that have included a federal question have qualified for removal under a combination of § 1441(a) and the federal courts' broad supplemental jurisdiction. Next, in the fairly rare event that the state claims in a state court action could not be construed as pendent to a federal claim, federal courts have nevertheless been able to invoke § 1441(c) to remove the action. Given the combination of these two removal powers, federal courts have not faced a situation in which a state court action is not removable despite the presence of a federal question.

However, in *Thomas v. Shelton,* 740 F.2d 478, 483–84 (7th Cir.1984), the Seventh Circuit did address this situation, albeit in hypothetical form. Writing at a time when § 1441(c) still permitted removal on the basis of diversity jurisdiction, Judge Posner stated:

Although section 1441(c), unlike the old section 71, is not explicitly limited to diversity cases, its principal and maybe only application is to such cases. If it were not for section 1441(c) the diversity plaintiff who wanted to litigate his case in state court could, simply by joining a claim against a resident of his state, destroy the complete diversity required for federal diversity jurisdiction and thus prevent the nonresident defendant from removing. If, however, the plaintiff's claim arose under federal law, joining a nonfederal claim would not defeat removal. This is true whether the nonfederal claim was closely related to the federal claim or completely unrelated. If the former, it would be within the pendent jurisdiction of the federal district courts ...; and then the whole case would be within the original jurisdiction of those courts and therefore removable under section 1441(a). *If the claims were unrelated, there would really be two cases, not one—a federal case, and an unrelated state case, and the first could be removed under section 1441(a).* We know of no federal-question case that was held nonremovable before section 1441(c) was enacted merely because the plaintiff had joined a state claim with his federal claim.

740 F.2d at 483 (emphasis added) (citations omitted).

■■■ This Court agrees with the analysis of the *Thomas* court, and accordingly adopts it. Plaintiff has, in effect, brought two cases; the Michigan rules governing pleading have simply permitted him to bring those two cases within a single complaint. This Court's removal power, and the power of federal courts generally to hear matters that conform to the constitutional definition of a "case," need not be defeated by a particular state's rules of pleading. Rather, so long as Plaintiff's complaint states an identifiable, separate "case" lying within this Court's federal question jurisdiction, § 1441(a) authorizes the removal of this separate case.[17]

---

17. At first blush, there might appear to be some tension between this conclusion and the Court's prior refusal to uphold the constitutionality of § 1441(c) by construing it in harmony with the notion of a constitutional "case." However, on closer inspection, it is clear that no such alternate construction could have rescued § 1441(c).

That provision specifically speaks of "separate and independent" claims that, when joined together, constitute an "entire case." But, as noted earlier, truly "separate and independent" claims cannot lie within a single constitutional "case." Thus, any attempt to construe the "entire case" language of § 1441(c) in a constitu-

This result can certainly be justified on policy grounds. First, permitting removal of a separate federal "case" protects the federal interest, recognized in Article III, in having important questions of federal law resolved by federal courts. *See Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 246 n. 13, 90 S.Ct. 1583, 1590 n. 13, 26 L.Ed.2d 199 (1970) (noting that the federal question removal provision serves to "protect federal rights" and "provide a forum that could more accurately interpret federal law"). Further, as noted by the *Thomas* court, if federal courts possess the power to remove federal claims within state court actions, then a plaintiff will be unable to prevent removal simply by joining an unrelated state claim to a federal claim. Finally, as discussed above, absent such removal authority, the federal courts would be subject to the vagaries of individual state pleading rules and their inevitably differing definitions of what constitutes a "case." *See Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 705, 92 S.Ct. 1344, 1349, 31 L.Ed.2d 612 (1972) ("While, of course, [a state] is free to establish such rules of practice for [its] own courts as [it] chooses, the removal statutes and decisions of this Court are intended to have uniform nationwide application.").

Clearly, in light of this Court's earlier discussion, these policy-based considerations cannot themselves justify removal of Plaintiff's federal claim; rather, some statutory provision must authorize this removal. *See Finley v. United States*, 490 U.S. 545, 547–48, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989) (noting that a federal court cannot exercise jurisdiction absent both constitutional and statutory authorization). Accordingly, the Court turns to the language of § 1441(a), and finds that this posited removal power enjoys at least some, if not total, support in that language.

Section 1441(a) authorizes removal of "civil actions" that lie within the Court's original jurisdiction. If the provision instead authorized removal of "cases," it clearly would be appropriate to construe the term "case" in accordance with federal constitutional principles, rather than determining the scope of that term by resort to fifty individual state laws. Thus, an alternate version of § 1441(a) that spoke of removal of "cases" arguably would permit piecemeal removal of federal "cases" that lie within broader state court actions. Yet, there is no reason to believe that Congress attached any special significance to its choice of "civil action" rather than "case" in the provision.[18]

In fact, when confronted with this same task of reconciling a statutory reference to "civil actions" with the Article III reference to "cases," the *Gibbs* Court treated the two terms synonymously. Because the action in *Gibbs* was originally brought in federal court, the district court in that case necessarily invoked its federal question jurisdiction as conferred by statute:

> The district courts shall have original jurisdiction of all *civil actions* arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331 (emphasis added). This language, of course, mirrors the language of Article III, § 2, with the exception that § 1331 refers to "civil actions" rather than "Cases, in Law and Equity." Accordingly, unless this single difference is legally significant, Congress apparently intended § 1331 to confer original jurisdiction over federal question cases to the full extent permitted under the Constitution.

The *Gibbs* Court evidently concluded that § 1331 should be so construed. Without pausing to consider the meaning of the "civil actions" terminology of § 1331, the Court looked directly to the language of Article III, § 2, as defining the extent of the district court's pendent jurisdiction over state claims. *See Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. Moreover, by conflating the statutory and constitutional bases for asserting original jurisdiction over federal question cases, the Court implicitly found that § 1331 authorizes

tional sense would render the provision internally inconsistent.

**18.** Indeed, while some provisions dealing with removal, such as 28 U.S.C. § 1446, also speak of "civil actions," others, such as 28 U.S.C. § 1447, instead refer to "cases." The Court is unaware of any reason for this difference in terminology.

district courts to examine a complaint and dismiss those state claims that lie outside a federal court's pendent jurisdiction—*i.e.,* those claims that do not share a "common nucleus of operative fact" with a federal claim.

Viewed in this light, *Gibbs* strongly supports this Court's conclusion that § 1441(a) permits removal of a set of claims within a state court action that satisfies the constitutional definition of a "case." Under this construction, § 1441(a) calls for the same determination as does § 1331; whether a matter arrives at a district court through removal or through the filing of a complaint, the court must determine whether the state claims asserted in the action fall within a federal court's pendent jurisdiction.[19] The district courts' experience with § 1331 does not indicate that this construction § 1441(a) will impose an onerous burden upon the federal courts.

Further, construing the "civil action" language of § 1441(a) in harmony with the identical language of § 1331 best conforms with the evident congressional intent to confer removal jurisdiction to the same extent as original jurisdiction. Section 1441(a) itself explicitly ties removal jurisdiction to original jurisdiction by providing for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Moreover, prior to its amendment in 1990, § 1441(c) provided that a district court "may remand all matters not otherwise within its original jurisdiction." Finally, the Supreme Court has noted that this nexus between a district court's removal and original jurisdiction is a "more-or-less constant feature of the removal statute." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 19 n. 18, 103 S.Ct. 2841, 2851 n. 18, 77 L.Ed.2d 420 (1983).

Accordingly, the Court concludes that § 1441(a) authorizes the removal of that portion of Plaintiff's state court action that lies within the boundaries of a "case" under Article III, § 2. Having earlier concluded that the constitutional "case" in this matter does not extend to Plaintiff's state claims, the Court finds that Defendant's removal of the instant action is proper with respect to Plaintiff's FCRA claim, but not with respect to Plaintiff's two state claims. Therefore, the Court retains jurisdiction over Plaintiff's FCRA claim pursuant to § 1441(a), but remands Plaintiff's state claims to the Oakland County Circuit Court pursuant to § 1447(c).

**E. *This Court May Exercise Personal Jurisdiction over Defendant for the Limited Purpose of Addressing Plaintiff's Federal Claim.***

█ Because the Court has concluded that Plaintiff's state law claims must be remanded to the state court for want of subject matter jurisdiction, the Court need only address Defendant's motion to dismiss insofar as it concerns Plaintiff's federal claim. Defendant contends that Plaintiff's federal claim, now that it stands alone, does not provide a basis for this Court's exercise of personal jurisdiction over Defendant.

The Court disagrees, for the reasons stated in the Magistrate Judge's Report and Recommendation. As the Magistrate Judge pointed out, the factual predicate for Plaintiff's FCRA claim clearly "lies in the wake of" Defendant's earlier decision to bring suit against Plaintiff in a Michigan court. *See Lanier v. American Bd. of Endodontics,* 843 F.2d 901, 909 (6th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). This causal relationship between the prior Michigan litigation and Plaintiff's federal claim, while not sufficient to confer upon this Court subject matter jurisdiction over Plaintiff's state claims, *is* sufficient to establish this Court's personal jurisdiction over Defendant.[20] Moreover, because De-

19. For example, if Plaintiff had filed his complaint in federal rather than state court, this Court would have examined the complaint in light of § 1331 (and, of course, § 1367(a), which codifies the extent of a district court's supplemental jurisdiction), and would have concluded that it could exercise jurisdiction only over Plaintiff's FCRA claim. This Court interprets

§ 1441(a) as requiring the same inquiry, and accordingly reaches the same result despite the different procedural posture.

20. There is no irreconcilable conflict between these two jurisdictional holdings. Rather, two distinct sets of standards govern the extent of this

fendant purposefully brought an action in a Michigan court in order to enforce a New Jersey judgment against Plaintiff, it would not offend traditional notions of justice and fair play to require Defendant to defend against Plaintiff's federal claim in this Court. Consequently, the Court denies the portion of Defendant's motion that seeks to dismiss Plaintiff's federal claim for want of personal jurisdiction.

## V. CONCLUSION

In summary, the Court finds that Plaintiff's state claims do not lie within the Court's supplemental jurisdiction as conferred by 28 U.S.C. § 1367(a). Next, the Court finds that 28 U.S.C. § 1441(c) is unconstitutional, because that provision purports to confer subject matter jurisdiction over state claims in excess of the jurisdictional limits stated in Article III, § 2 of the Constitution. Further, the Court finds that removal of Plaintiff's federal claim is authorized by 28 U.S.C. § 1441(a), and that remand of Plaintiff's improperly removed state claims is dictated by 28 U.S.C. § 1447(c). Finally, the Court finds that it may properly exercise personal jurisdiction over Defendant for the purpose of addressing Plaintiff's federal claim.

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand be GRANTED IN PART and DENIED IN PART. Plaintiff's state claims, stated in Counts I and II of his complaint, are hereby REMANDED to the Oakland County Circuit Court. However, this Court will retain jurisdiction over Plaintiff's federal claim, stated in Count III of his complaint. IT IS FURTHER ORDERED that Defendant's Motion to Dismiss be DENIED.

Court's subject matter jurisdiction and the extent of this Court's personal jurisdiction.